**UNITED STATES of America**

v.

**Robert P. DELKER, Appellant.**

**No. 84–1744.**

United States Court of Appeals,
Third Circuit.

Argued Jan. 14, 1985.

Decided March 18, 1985.

As Corrected March 27, 1985.

Michael M. Mustokoff (Argued), Duane, Morris & Heckscher, Philadelphia, Pa., for appellant.

Joseph D. Mancano (Argued), Organized Crime & Racketeering Section, Crim. Div. —Phila. Strike Force, Philadelphia, Pa., for appellee.

Before ADAMS and WEIS, Circuit Judges and HARRIS, District Judge *.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This appeal presents a multitude of issues concerning the construction and validity of the pretrial detention provisions of the Bail Reform Act of 1984, Pub.L. No. 98–473, §§ 202–210, 98 Stat. 1976–87 (to be codified at 18 U.S.C. §§ 3141–50).[1] Because we believe that the district court did not err in determining that appellant should be detained on the basis that he posed a danger to the community, we will affirm its detention order.

I

Appellant Robert Delker was indicted along with five co-defendants in October 1984. He was charged with participating in a conspiracy in violation of the Racketeer Influenced and Corrupt Organizations

---

* Hon. Oren Harris, United States District Courts for the Eastern and Western Districts of Arkansas, sitting by designation.

1. Throughout this opinion, when discussing the Bail Reform Act of 1984, we will use the abbreviation "BRA" and refer to the section of Title 18 of the United States Code at which the new section will be codified.

Act (RICO), 18 U.S.C. § 1962 (1982), conducting a pattern of racketeering that included the acceptance of illegal payments by employees of a labor union, 29 U.S.C. § 186 (1982), interference with interstate commerce by extortion, 18 U.S.C. § 1951 (1982), and theft by extortion, 18 Pa.Cons. Stat.Ann. § 3923(a)(7) (1983). He was also charged with a substantive violation of the Hobbs Act, 18 U.S.C. § 1951, resulting from the beating of painting contractors and the use of death threats against them in an attempt to extort money, three substantive violations of the Taft-Hartley Act, 29 U.S.C. § 186(b) (1982), and three violations of the federal income tax laws, 26 U.S.C. § 7206(1) (1982).

The charges arose out of appellant's involvement in the affairs of Painter's Local Union No. 1269. The indictment alleges that Delker, an employee of the union, was a member of a group that during the course of an eight-year conspiracy illegally controlled Local 1269 through the use of violence, threats, and physical and economic intimidation. The conspiracy came to dominate all painting work performed by union members in the Lehigh Valley, Pennsylvania area. Delker allegedly extorted money from painting contractors in exchange for labor peace, and extorted money from members of Local 1269 in exchange for the opportunity to work.

At the time the indictment was filed, the government moved for a pretrial detention hearing with respect to appellant and two co-defendants. On November 1, 1984, Delker surrendered himself to the authorities, and was promptly brought before a federal magistrate for a bail hearing. At the conclusion of the hearing, the magistrate denied the government's motion for pretrial detention pursuant to § 3142(d) of the new Bail Reform Act. He concluded that pretrial detention was not required, that bail of $250,000 was adequate, and that a series of conditions insulating the appellant from certain persons would guarantee the safety of the community. Those conditions included prohibiting Delker from any contact with alleged victims, potential witnesses, and the union, from which he was to take a leave of absence.

On November 5, 1984, the government filed a motion with the district court pursuant to § 3145(a)(1) of the new Act seeking review of the magistrate's release order. On November 16, 1984, a pretrial detention hearing was held before a district judge, who heard evidence concerning the detention issue. The court entertained argument from both government and defense counsel on November 29, 1984, and issued its decision on December 10, 1984.

Judge Huyett held that the government had met its burden "of demonstrating by clear and convincing evidence that Delker, if released on bail, would pose a threat to members of the community especially potential witnesses in this case." Delker appeals from the order of the district court detaining him pending trial.[2]

## II

Appellant raises numerous issues that will be discussed under three general categories. First, Delker challenges the method and scope of review employed by the district court regarding the magistrate's release order. Second, appellant claims he was denied statutory rights and constitutional due process by the manner in which the district court conducted the evidentiary hearing. Finally, he asserts that the facts of his case do not demonstrate clearly and convincingly that he poses a danger to the community.

### A.

On October 12, 1984, the new Bail Reform Act took effect, making several substantial changes in the basic provisions of

---

2. Immediately upon concluding that the district court had not erred in detaining the defendant, this Court issued an order affirming the decision of the district court. The order preceded the filing of this opinion so as to enable the appellant if he so desired to seek speedy review of his detention status in the United States Supreme Court. See BRA § 3145(c) (appeal must be determined promptly).

the previous Bail Reform Act of 1966. In a major change the new Act permits the detention of a defendant pending trial when, after a hearing, a judicial officer finds that no condition or combination of conditions will reasonably assure the safety of other persons or the community. BRA § 3142(e). The legislative history of the Act suggests that "there is a small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of release can reasonably assure the safety of the community or other persons. It is with respect to this limited group of offenders that the courts must be given the power to deny release pending trial." S.Rep. No. 225, 98th Cong., 1st Sess. 6–7 (1983), *reprinted in* 1984 U.S.Code Cong. & Ad. News 1, 9 (Supp. 9A).

The legislative history also specifies that the concept of a defendant's dangerousness as used in the Act is to "be given a broader construction than merely danger of harm involving physical violence." *Id.* at 12–13 (1983), *reprinted in* 1984 U.S.Code Cong. & Ad.News at 15 (Supp. 9A). (In so doing, the Senate Report cites to the opinion of this Court in *United States v. Provenzano*, 605 F.2d 85 (3d Cir.1979).) The Congress was apparently concerned with the safety not only "of a particular identifiable individual, perhaps a victim or witness," but also of the community as a whole. *Id.*

Under the new statute, if a person is ordered released by a magistrate, the government may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. A defendant may similarly seek review of a detention order. The court of original jurisdiction is directed to adjudicate the motion for review promptly, BRA § 3145(a)(1), and either party is entitled to prompt appellate review of the order of the district court. *Id.* § 3145(c).

### B.

If a case involves "a crime of violence" or other specified serious offenses, and the government moves for pretrial detention, a

"judicial officer shall hold a hearing to determine whether any condition ... will reasonably assure ... the safety of any other person and the community." BRA § 3142(f)(1)(A). At the hearing, the "person has the right to be represented by counsel," and the Act guarantees that he "shall be afforded an opportunity to testify, to present witnesses on his own behalf, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise." *Id.* § 3142(f). The statute stipulates that the "rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." *Id.*

A detention order must include findings of fact and a statement providing the reasons for detention, and to the extent practicable should direct that the person be confined in a facility separate from persons awaiting or serving sentences. *Id.* § 3142(i). A release order must include a written statement setting forth any conditions to which the release is subject and advising the defendant of the consequences of violating any of the release conditions. *Id.* § 3142(h).

### III

### A.

Appellant first argues that the district court should not have held an evidentiary hearing when reviewing the magistrate's bail decision. He does not contend that a district court may never hold such an evidentiary hearing. Rather, he argues that such a hearing is proper only when either party has new facts, evidence, or testimony that were not available at the time of the magistrate's hearing. Delker suggests that nothing in the Act entitles a disappointed party—government or defendant— to a second hearing, and that such a hearing, if conducted as a matter of course, would render superfluous the proceedings before the magistrate.

■ For further support of his position Delker points to the language in § 3142(f)

of the Act which states that the "hearing shall be held immediately upon the person's *first* appearance before the judicial officer." (emphasis added). We do not read that language to suggest, however, that a hearing may be had only upon the defendant's appearance before the first judicial officer he or she faces. Rather, the import of the clause is to call for a prompt hearing on the issue of detention. More pertinent is § 3142(e) which states that if *"after a hearing* ... the judicial officer finds that no condition or combination of conditions will reasonably assure ... the safety of any other person and the community, he shall order" detention. (emphasis added). In the present situation, the judicial officer who ordered detention, the district court judge, did so only after conducting a hearing as the statute apparently permits.

■ In a closely related argument, appellant objects to the district court's having made a *de novo* determination of his request for bail. He asserts that the district court is required to "review" the transcript of the magistrate's hearing and the decision, and if the court disagrees with the prior decision, it must specifically explain why the magistrate's decision was incorrect.

Nothing in the statute directly answers the question of the proper scope of review when a district court "reviews" a magistrate's bail decision. And the legislative history is silent on the issue. Nevertheless, several factors suggest that the district court was correct in making an independent determination of Delker's eligibility for release on bail.

First, it is noteworthy that while a magistrate, like all "judicial officers," must include "written findings of fact and a written statement of the reasons" in a detention order, a release order of a magistrate need not contain such specific findings. *Compare* BRA § 3142 *with id.* § 3142(i); *see also* Fed.R.App.P. 9 (applying to district courts). Thus there may well be insufficient findings and reasoning regarding a magistrate's release decision upon which the district court could conduct a limited,

quasi-appellate review when the government seeks detention. In contrast are the provisions of Federal Rule of Appellate Procedure 9, which require the district court to state in writing the reasons for its entry of an order refusing *or* imposing conditions of release. The Appellate Rule enables the courts of appeals to dispose of a bail appeal in a speedy fashion, on an informal record, and often without the necessity of briefs.

A second factor supporting the interpretation that the Bail Reform Act contemplates *de novo* determinations in the district court is that under the previous statute a similar practice appears to have developed. In *United States v. Thibodeaux,* 663 F.2d 520, 522 (5th Cir.1981), the court declared that the prior review statute, 18 U.S.C. § 3147 (repealed October 12, 1984), conferred

> "a responsibility on the district court to reconsider the conditions of release fixed by another judicial officer ... as unfettered as it would be if the district court were considering whether to amend its own action. It is not constrained to look for abuse of discretion or to defer to the judgment of the prior judicial officer. These latter considerations would be pertinent when ... the district court's action is called before the court of appeals."

*See United States v. Ellis DeMarchena,* 330 F.Supp. 1223, 1226 (S.D.Cal.1971); *see also United States v. Zuccaro,* 645 F.2d 104, 106 (2d Cir.), *cert. denied,* 454 U.S. 823, 102 S.Ct. 110, 70 L.Ed.2d 96 (1981); *Wood v. United States,* 391 F.2d 981, 984 (D.C.Cir.1968); *cf. United States v. Provenzano,* 605 F.2d 85 (3d Cir.1979). *But cf. United States v. Birges,* 523 F.Supp. 472 (D.Nev.1981).

Nothing in the new Act suggests Congress intended to change that practice. Indeed the legislative history states that § 3145 made only two substantial changes in the law: (1) permitting review of all releases irrespective of whether the defendant could or could not comply with the conditions of release; and (2) permitting the government to seek review and appeal of release decisions to the same extent that

such authority is given defendants with respect to detention orders. This suggests that Congress intended the prior practice of de novo review to continue.

In most cases the district court will find it useful to consider carefully the decision and reasoning of the magistrate. We cannot say, however, that in the present situation, after reviewing the magistrate's opinion and holding a hearing, the district court erred by not combing the transcript of the hearing before the magistrate [3] or in not specifically detailing which portions of the magistrate's reasoning were incorrect. It is sufficient that the district court fully explained the result it reached and the reasons for it.

### B.

Appellant next questions various procedural aspects of the district court's evidentiary hearing. The Act affords a defendant "an opportunity to testify, to present witnesses on his own behalf, to cross-examine witnesses who appear at the hearing and to present information by proffer or otherwise." BRA § 3142(f). Delker maintains that the district court violated the statute by requiring his counsel to proceed by the proffer of the testimony of various defense witnesses. He reads the statute, in affording an opportunity "to present witnesses," to afford the defense, not the court, the choice of whether to proceed "by proffer or otherwise."

■ It is not frivolous to suggest that the conjunctive "and" employed in § 3142(f) gives the defendant the right to choose. Nevertheless, for several reasons we reject the construction of the Act advanced by Delker. We are guided by the

proposition stated in the legislative history that the "procedural requirements for the pretrial detention hearing set forth in § 3142(f) are based on those of the District of Columbia statute which were held to meet constitutional due process requirements in *United States v. Edwards*," 430 A.2d 1321 (D.C.App.1981) (en banc), *cert. denied*, 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982). S.Rep. No. 225, 98th Cong., at 1st Sess. at 22 (1983), *reprinted in* 1984 U.S.Code Cong. & Ad.News at 25 (Supp. 9A).

The District of Columbia detention statute contained similar conjunctive language in setting forth the procedural requirements at the hearing. *See* D.C.Code Ann. § 23–1322(c)(4). Yet in *Edwards* the court held that the question whether to produce evidence by direct testimony or proffer was in the discretion of the court. 430 A.2d at 1334. *Edwards* relied on the legislative history of the District of Columbia statute:

> [B]ail hearings under the Bail Reform Act, which frequently result in detention of the accused, proceed primarily by way of proffer. They are not formal trials requiring strict adherence to technical rules of evidence. *If the court is dissatisfied with the nature of the proffer, it can always, within its discretion, insist on direct testimony.* But the discretion should be left to the court without imposing on it the burden of limiting admissibility to that it would permit a jury to hear. [H.R.Rep. No. 91–907, 91st Cong., 2d Sess. 182, 184 (1970) (emphasis added).]

*Id.*

Congress was aware of this interpretation of the District of Columbia statute and

---

**3.** It is preferable that a transcript of the hearing before the magistrate be available for consideration by the district court in its review of the magistrate's decision, in order that the court may, in an informed exercise of discretion, determine whether additional evidence is desirable. There may be instances, such as in the case at hand, in which the district court has held a complete evidentiary hearing of its own, and therefore a transcript of the hearing before the magistrate is not essential. The Bail Reform Act permits detention of the defendant pending completion of a hearing, BRA

§ 3142(f), and thus a judicial officer is commanded to render a prompt decision. It may not always be possible to procure a transcript quickly. We note that under the statute a defendant may request a continuance of five days if he or she wishes the time. BRA § 3142(f). Thus while we are reluctant to impose a time-consuming requirement on a proceeding that must by its nature be speedy, we believe that the presence of a transcript is important and that a defendant, if he or she considers it advisable, may employ a continuance to ensure that the magistrate's transcript is available.

the practice that had evolved when it relied on that statute as a model for the Bail Reform Act of 1984. In light of this, and the fact that Congress warned that bail hearings should not become mini-trials, *see, e.g.,* S.Rep. No. 225, 98th Cong., 1st Sess. at 22 (1983), *reprinted in* 1984 U.S.Code Cong. & Ad.News at 25 (Supp. 9A), we believe that discretion lies with the district court to accept evidence by live testimony or proffer. *See United States v. Payden,* 598 F.Supp. 1388, 1398 n. 14 (S.D.N.Y. 1984).

The district court in the present matter agreed to accept appellant's witnesses as fully credible. It acknowledged in its opinion the evidence concerning Delker's community ties, history of employment, and family relationship. Nevertheless, Delker urges that even if the court has discretion to accept evidence by proffer, the district court here abused its discretion in limiting the witnesses to testimony by proffer because they "might have testified as to their ability to keep a tight rein on the defendant" and thus "guarantee the safety of the community."

As proffered, the defense testimony chiefly concerned the issue of community ties. Had the district court ordered the detention of Delker based upon a finding that there was a danger that he might flee, appellant might have a stronger argument. The district court, however, rejected the government's argument that there was a strong likelihood that Delker would flee before trial. Instead the court bottomed its order requiring detention on the finding that Delker posed a danger to members of the community. The legislative history states that Congress was "aware of the growing evidence that the presence of [a tie to the community] ... has no correlation with the question of safety of the community." S.Rep. No. 225, 98th Cong., 1st Sess. at 24, *reprinted in* 1984 U.S.Code Cong. & Ad.News at 27 (Supp. 9A). Although the community-tie factor was retained in the new Act, it is of limited weight in the context of this case. Consequently, the district court did not abuse its

discretion in limiting the witnesses to proffered testimony.

Appellant next contends that much of the government's evidence was improperly admitted. The evidence tendered by the government consisted primarily of the testimony of Special Agent Kolde of the FBI, and Agent Nolan of the U.S. Department of Labor, whose investigation of Delker led to the indictment. The agents' testimony recounted their investigation and included the out-of-court statements of several witnesses to, and victims of, the alleged conspiracy.

The Bail Reform Act of 1984 states that the rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at a detention hearing. BRA § 3142(f). Congress intended to continue the previous law in this regard. S.Rep. No. 255, 98th Cong., 1st Sess. at 22, *reprinted in* 1984 U.S.Code Cong. & Ad.News at 25 (Supp. 9A). Under the 1966 Act, hearsay evidence was admissible in bail hearings, 18 U.S.C. § 3146(f)(repealed Oct. 12, 1984), and apparently was often used. *See, e.g., United States v. Golding,* 742 F.2d 840, 842 (5th Cir.1984) (pretrial bail); *United States v. Graewe,* 689 F.2d 54, 55 (6th Cir.1982) (per curiam) (pretrial bail); *United States v. Wind,* 527 F.2d 672, 675 (6th Cir.1975) (pretrial bail); *United States v. Medina,* 570 F.Supp. 853, 862 (D.P.R.1983) (bail pending appeal); *United States v. Brown,* 399 F.Supp. 631, 632–33 (W.D.Okla. 1975); *see also United States v. Montemayor,* 666 F.2d 235 (5th Cir.1982); *cf. United States v. Ammirato,* 670 F.2d 552, 556–57 (5th Cir.1982) (sentencing).

Delker insists that while hearsay testimony may be used in a detention hearing for certain purposes, such as describing prior acts or the present conduct of the accused, hearsay may not be employed to demonstrate that appellant committed the crime with which he is charged. There is, he maintains, a due process right to confront those witnesses whose testimony is adverse and material concerning the crimes charged in an indictment. If hearsay is

prohibited regarding this issue, Delker argues that the district court erred in denying his request to subpoena material government witnesses.

 Pretrial detention implicates a liberty interest and thus may not be imposed contrary to the mandates of procedural due process. *E.g., Morrissey v. Brewer*, 408 U.S. 471, 482, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). But due process "is flexible and calls for such procedural protection as the particular situation demands." *Id.* at 481, 92 S.Ct. at 2600. In several cases the Supreme Court has held that not every potential loss of liberty requires the full panoply of procedural guarantees available at a criminal trial. *E.g., id.; see also Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

In *Gerstein* the Supreme Court considered the requisite procedures for a probable cause determination hearing following a warrantless arrest. The issue at such a hearing "is whether there is probable cause for detaining the arrested person pending further proceedings." *Id.* at 120, 95 S.Ct. at 866. The Court held that "the full panoply of adversary safeguards—counsel, confrontation, cross-examination, and compulsory process ... are not essential." *Id.* at 119–20, 95 S.Ct. at 866. The probable cause determination, declared the Court, although it may result in a temporary loss of liberty, "traditionally has been decided by a magistrate in a nonadversary proceeding on hearsay and written testimony, and the Court has approved these informal modes of proof." *Id.* at 120, 95 S.Ct. at 866.

The District of Columbia Court of Appeals in *Edwards* reasoned that identical interests were at stake in a *Gerstein* preliminary hearing and a pretrial detention hearing. "The effect of the findings in a detention hearing and a preliminary (*Gerstein* ) hearing is the same: each hearing determines whether the accused may be detained pending trial. The individual's liberty interest affected by each proceeding is

accordingly the same." 430 A.2d at 1336. We believe this analysis to be sound.

Appellant seeks to analogize his situation to that in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), which involved a parole revocation hearing. In some respects the Court in *Morrissey* required greater procedural protections than those dictated in *Gerstein*. Nevertheless, it should be emphasized that in *Morrissey*, the Court held that a parole revocation hearing may be "informal" and that the right to confront and cross-examine witnesses was not absolute, but could be curtailed by the court if the witness would be subjected to risk of harm if his identity were disclosed, *id.* at 487, 92 S.Ct. at 2603, or if there is otherwise "good cause for not allowing confrontation." *Id.* at 489, 92 S.Ct. at 2604; *see also Gaynon v. Scarpelli*, 411 U.S. 778, 784 n. 5, 93 S.Ct. 1756, 1760, 36 L.Ed.2d 656 (1973) (Court did not "intend to prohibit use where appropriate of the conventional substitutes for live testimony").

Moreover, as the Supreme Court noted when distinguishing *Morrissey* in *Gerstein*, the added protections afforded at a preliminary parole revocation hearing derive from the fact that the parole hearing—unlike the pretrial detention hearing—"serves the purpose of gathering and preserving live testimony," because the final parole revocation decision "frequently is held at some distance from the place where the violation occurred." 420 U.S. at 121 n. 22, 95 S.Ct. at 867 n. 22. In addition, the Court distinguished the two situations on the basis that the "formal criminal process" following a pretrial detention decision offers more protection from initial error than do the procedures following a preliminary parole revocation hearing. *Id.*

 We believe that the hearing challenged here should be governed by *Gerstein* standards, and thus the district court did not err in admitting hearsay at the hearing and in refusing to subpoena the witnesses whose out-of-court statements

linked appellant to the conspiracy and other crimes.[1]

Delker also asserts that the district court erred in cutting off his cross-examination of the government's investigating agents concerning their opinion as to the adequacy of the release conditions set by the magistrate. The district court was apparently of the view that such questions improperly sought "expert opinions" and that the area of questioning was more properly dealt with as legal argument.

■ The Act affords a defendant an opportunity "to cross-examine witnesses who appear at the hearing." BRA § 3142(f). Although the district court may have some discretion to curtail cross-examination based upon such criterion as relevancy, or to prevent a pretrial hearing from becoming a full-blown trial, the court should always exercise that discretion with the recognition that a pretrial detention hearing may restrict for a significant time the liberty of a presumably innocent person. It thus might have been more appropriate for the district court to permit the questioning of the agents with regard to the magistrate's order. Any error in this regard, however, must be deemed harmless in light of the scope of review utilized by the district court, the nature of the evidence excluded, and the weight of evidence indicating appellant's dangerousness.

Delker apparently places considerable weight on the questioning of the agents because of his argument that the district court has only a limited scope of review over the magistrate's order. If the proper scope of review were as narrow as appellant suggests, the excluded opinion evidence arguably would be more important. However, we have rejected the scope of review suggested by Delker in favor of an independent determination of the release

issue by the district court. The court's detention decision was properly based on the factors deemed important by Congress, as supported by the facts adduced at the hearing. Those facts clearly and convincingly showed that Delker posed a danger to the community. *See infra* Section III C. In this context the opinion of a witness regarding those facts is less crucial.[5]

■ The final procedural argument pressed by the appellant is that he had inadequate notice of the format of the detention hearing in the district court. Such a proposition must be rejected. The Bail Reform Act of 1984 sets forth the procedural requirements for a pretrial detention hearing, § 3142(f), and the factors to be considered by the judicial officer in determining whether there are conditions of release that will reasonably assure the safety of the community, § 3142(g). As Delker concedes, the government made virtually the same arguments in the district court as it had made before the magistrate. While the paucity of court decisions construing the new Act may have contributed some uncertainty regarding the interstices of the statute, this seems no different from the situation whenever any new law takes effect. There was no due process violation in this regard.

### C.

Appellant also challenges the district court's conclusion that no conditions regarding his release would reasonably assure the safety of the community. In ascertaining whether to detain or release a defendant, the judicial officer is directed by the statute to consider the available information concerning several factors, including: (1) the nature and seriousness of the offense charged; (2) the weight of evidence against the defendant; (3) the defendant's

---

4. We do not address the issue whether a defendant may have a right to confront non-appearing government witnesses when the defendant can make a specific proffer to the court of how the witness' testimony will negate the government's contention that the defendant is a danger to the community, or will rebut a presumption created by the statute that the defendant should be detained. *See* BRA § 3142(e).

5. It is also significant that the testimony excluded was that of the government agents who, given their function and prior testimony, presumably would have objected the adequacy of the magistrate's release conditions.

character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. BRA § 3142(g).

The legislative history posits that the characteristics that will support pretrial detention may vary considerably in each case, and thus Congress "has chosen to leave the resolution of this question [what kinds of information are a sufficient basis for the denial of release] to the sound discretion of the court's acting on a case-by-case basis." S.Rep. No. 225, 98th Cong., 1st Sess. at 18–19 (1983), *reprinted in* 1984 U.S.Code Cong. & Ad.News at 21–22 (Supp. 9A). Nevertheless, the facts employed to support a detention decision must "be supported by clear and convincing evidence." BRA § 3142(f). "Thus, for example, if the criminal history of the defendant is one of the factors to be relied upon, clear evidence such as record of arrest and conviction should be presented ... [and] if the dangerous nature of the current offense is to be a basis of detention, then there should be evidence of the specific elements or circumstances of the offense, such as possession or use of a weapon or threat to a witness...." S.Rep. No. 225, 98th Cong., 1st Sess. at 22 (1983), *reprinted in* 1984 U.S.Code Cong. & Ad.News at 25 (Supp. 9A).

Before addressing this question of danger on the merits, it is necessary to clarify the standard of review appropriate to an appeal from a district court's detention decision. Under the 1966 Act, an order by the district court detaining a person prior to trial, or imposing conditions of release that a defendant could not meet, was to be affirmed on appeal if it was "supported by the proceedings below." 18 U.S.C. § 3147(b) (repealed Oct. 12, 1984); *see, e.g., United States v. Golding,* 742 F.2d 840, 841 (5th Cir.1984). The prior act exempted from that standard of review, however, motions for release on bail after conviction of a crime. *See* 18 U.S.C. § 3148 (repealed Oct. 12, 1984). Because of that exemption,

courts of appeals were required to designate the proper scope of review for post-trial bail decisions without explicit statutory guidance. In *United States v. Provenzano,* 605 F.2d 85, 92 (3d Cir.1979), we held that a court of appeals has a non-delegable responsibility to make an independent determination of the merits of the bail application pending the appeal of a conviction.

Section 3145 of the Bail Reform Act of 1984 governs appeals by the government of pretrial release decisions by the district court, as well as appeals by a defendant of a detention decision or the conditions of release imposed by the district court. The Act does not, however, provide a standard of review for such appeals—either pretrial or post-conviction.

While not explicitly addressing the issue, the legislative history offers some guidance. The Senate Report states that under the new Act the procedures for appeals are still those "set forth in Rule 9 of the Federal Rules of Appellate Procedure." S.Rep. No. 225, 98th Cong., 1st Sess. at 29 n. 92 (1983), *reprinted in* 1984 U.S.Code Cong. & Ad.News at 32 n. 92 (Supp. 9A). Rule 9(a) dictates that an appeal shall be heard "upon such papers, affidavits, and portions of the record as the parties shall present." In *Provenzano* we read identical terms in Rule 9(b) to suggest "that the court of appeals should independently determine such [release] applications." We noted that the rule permitted consideration of evidence that may not have been before the trial court. 605 F.2d at 93.

An independent determination by the appellate court would seem appropriate in light of the nature of the question to be determined. A crucial liberty interest is at stake. Moreover, in the Bail Reform Act of 1984 Congress altered prior law and permitted the government to appeal a district court's decision to release a defendant. The "clear public interest in permitting review of release orders which may be insufficient to prevent a defendant from fleeing or committing further crimes" would also be served by an expanded scope of review. *See* S.Rep. No. 225, 98th Cong., 1st Sess. at 30 (1983), *reprinted in* 1984 U.S.Code Cong. & Ad.News at 33 (Supp. 9A).

■ On the other hand, the Act requires that if a release or detention order was not originally entered by the district court, review by the district court must first be sought before an appeal may be filed under § 3145, *see id.* at 29, *reprinted in* 1984 U.S.Code Cong. & Ad.News at 32 (Supp. 9A). This fact, in conjunction with the mandate of Rule 9(a) that the district court "shall state in writing the reasons for the action taken," suggests that the courts of appeals are not free to ignore a trial judge's supporting statement of reasons for his or her actions.

A proper balance of these factors supports appellant's argument that the standard enunciated in *Provenzano* should apply. Rule 9's requirements mandate that appellate courts give the reasons articulated by trial judges respectful consideration, but if, after careful assessment of the trial judge's reasoning, together with such papers, affidavits, and portions of the record as the parties present, the court of appeals independently reaches a conclusion different from that of the trial judge the court of appeals has the power to amend or reverse a detention or release decision. *See Provenzano*, 605 F.2d at 193; *accord United States v. Stanley*, 152 U.S.App.D.C. 170, 179, 469 F.2d 576, 584 (1972) (District of Columbia statute).

■ Our independent analysis finds clear and convincing evidence that Delker poses a danger to the community within the meaning of the Bail Reform Act of 1984. He is charged with several serious offenses; the indictment alleges that he was part of a group that dominated a union local through the systematic use of force, violence, vandalism, and physical and economic intimidation. The Hobbs Act count results from Delker's alleged beating of and the use of a death threat in an attempt to extort money from a painting contractor. The Act provides for consideration of the nature and seriousness of the offense charged with specific emphasis upon crimes of violence. *See* S.Rep. No. 225, 98th Cong., 1st Sess. at 23, *reprinted in* 1984 U.S.Code Cong. & Ad.News at 26 (Supp.

9A). This first factor thus supports the district court's detention decision.

Next, despite appellant's protestation that he is not a "career offender," the record reveals that Delker has two Pennsylvania convictions for assault and battery in 1961, and a Pennsylvania conviction for robbery by assault and force in 1964. He also has a 1975 arrest for assault and resisting arrest, which was subsequently reduced to disorderly conduct at the time of a guilty plea. In 1977, Delker was arrested on criminal mischief charges. The Act specifically provides for consideration of prior arrests in the release decision, S.Rep. No. 225, 98th Cong., 1st Sess. at 23 n. 66, *reprinted in* 1984 U.S.Code Cong. & Ad. News at 26 n. 66 (Supp. 9A), and the legislative history of the Act records Congress' belief that there is a "significant correlation" between prior criminal history and pretrial rearrest. *Id.* at n. 68.

More importantly, the record reveals evidence that after appellant learned of the ongoing government investigation of his activities, he threatened and intimidated several alleged victims and potential witnesses. The legislative history of the Act repeatedly emphasizes that defendants who have threatened witnesses pose a significant danger and should be detained prior to trial. *Id.* at 7, 12, 15, 21, *reprinted in* 1984 U.S.Code Cong. & Ad.News at 10, 15, 18, 24, 25 (Supp. 9A). Agent Kolde testified about specific threats or attempts at intimidation made by Delker or his alleged agents against those witnesses who would testify against him in court, including a Lehigh Valley painting contractor in August, 1984; Mr. and Mrs. Brian Frankenfield in June, 1984; Junior Delker, appellant's brother; and Sandra Delker, appellant's estranged wife. Agent Kolde also testified that throughout the course of the investigation many witnesses stated that they feared for their safety and that of their families if they cooperated with the investigation.

Agent Nolan testified that during the course of the investigation numerous painting contractors, including Nicholas Zunas, Apostiles Kolidakis, and Emmanuel Pelekanakis, informed Agent Nolan that they

feared Delker and, therefore, did not want it known outside the government that they were cooperating.

Appellant contends that the magistrate imposed conditions of release that adequately ensured witness safety. The magistrate ordered that Delker have no contact with any potential witness, his co-defendants, or members of his union. Moreover, the magistrate ordered the FBI to contact all witnesses and tell them to report to the authorities any encounter with the appellant.

While such conditions might be efficacious in certain situations, we believe that the nature of Delker's conduct, specifically regarding potential witnesses, supports the district court's decision to overturn the magistrate's order. Evidence in the case at hand demonstrates that appellant already has threatened potential witnesses several times. The no-contact rule of the magistrate very well may be inadequate since it was designed to enable "the court to raise the issue with the defendant *before* actual intimidation has occurred." *Id.* at 15, *reprinted in* 1984 U.S.Code Cong. & Ad. News at 18 (Supp. 9A) (emphasis added). The legislative history declares that this release "condition should be imposed whenever the circumstances are such that the judge believes any form of victim or witness intimidation *may* occur." *Id.* (emphasis added). The district court did not err in concluding that based on the evidence of prior threats the condition would not adequately assure the safety of persons in the community.

Similarly, we reject appellant's claim that even if the alleged intimidation did occur as described, the FBI is able to protect fully potential witnesses. The agents did testify that each of the witnesses had been told to inform the FBI any time they perceived a potential danger. Agent Kolde also testified that such notification of the FBI had occurred soon after the alleged incidents of intimidation. However, given the violent nature of the alleged crimes (including extortion), Delker's criminal record, and the testimony concerning the alleged intimidation of witnesses that has already taken place, we cannot disagree with the district

court's refusal to rely on the possibility that witnesses might contact the FBI *after* having been threatened or harmed for the safety of persons in the community.

This Court recognizes, as did the district court, that appellant is a long term resident of the Allentown area, that he owns real estate there, and that his family resides there. Moreover, although he was aware of the government investigation, Delker did not attempt to flee the jurisdiction in order to avoid arrest. However, as noted earlier in a slightly different context, while community ties are relevant to the detention decision, they may be of less importance where the crucial issue is the safety of witnesses rather than the risk of flight. Defendant's community ties do not overshadow the factors that clearly and convincingly establish that he poses a danger to persons in the community.

## IV

The order of the district court will be affirmed.