## UNITED STATES of America

### v.

### Gil EPSTEIN.

### No. Cr.A. 01–M–178.

United States District Court,
E.D. Pennsylvania.

May 3, 2001.

---

**324**

Roy Black, Black Brebrick & Kornspan, Miami, FL, for Gil Epstein.

Mitchell Goldberg, U.S. Attorney's Office, Philadelphia, PA, for U.S.

### MEMORANDUM

BARTLE, District Judge.

We have before us the Government's motion to revoke a release order entered by a magistrate judge. 18 U.S.C. § 3145. Our review is *de novo*. *United States v. Delker*, 757 F.2d 1390, 1395 (3d Cir.1985).

Defendant Gil Epstein was arrested at the airport in Miami, Florida after entering the United States from Brazil. He has not yet been indicted, although the Government has assured us that its presentation to the Grand Jury is imminent. According to the affidavit of a federal Customs Agent, defendant devised a scheme to defraud his employer in the Eastern District of Pennsylvania through the use of wire communications in interstate commerce in violation of 18 U.S.C. § 1343.

At a pretrial detention hearing on April 13, 2001, a magistrate judge in the Southern District of Florida ordered Epstein released on bail with certain conditions and did so over the Government's vigorous objection. The magistrate judge, however, entered a stay, pending the Government's motion in this court for revocation of the release order and the transfer of the defendant from Miami to Philadelphia.

We held a hearing on May 1, 2001. For purposes of the pending motion, the facts are undisputed. The defendant is a successful business man who holds dual citizenship, both of Germany and Brazil. As the president of the Latin American Division of MG Industries, he defrauded his company of $6 million by submitting to it in Malvern, Pennsylvania false invoices from shell corporations. After auditors discovered the misappropriation, defendant promptly flew to the offices of the parent company in Germany, confessed all, and repaid the $6 million. The company kept him on the payroll for a period of time thereafter. The restitution occurred several years before his recent arrest.

Defendant, who has no prior criminal history, lives in Brazil with his wife and four young children. His parents and sister also reside there. He has substantial assets in that country, including a $3 million unencumbered home and other assets worth over $1 million. At the time of his arrest, he was earning an annual salary of approximately $200,000 from a Brazilian company. While he and his wife own two condominiums and other assets in South Florida with a net worth of about $1 million, he has no other ties to the United States. Significantly, there is no extradition treaty between the United States and Brazil.

The magistrate judge set bail at $1 million secured in part by the two properties in South Florida and ordered daily reporting to pretrial services and electronic monitoring from 6:00 p.m. to 6:00 a.m. It is the Government's position that defendant is a substantial risk of flight even under these

conditions and should be detained pending trial.

The Bail Reform Act governs the issue of pretrial detention. 18 U.S.C. § 3142. A person is either to be (1) released on personal recognizance or upon execution of an unsecured bond; (2) released on conditions; (3) temporarily detained to permit revocation of conditional release, deportation or exclusion; or (4) detained. The defendant here, who has allegedly committed the non-violent and non-drug related crime of wire fraud may be detained only if "the judicial officer finds no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community...." 18 U.S.C. § 3142(e). The Bail Reform Act requires a hearing to determine this issue, and the burden of proof is on the Government by a preponderance of the evidence. 18 U.S.C. § 3142(f); *United States v. Xulam*, 84 F.3d 441, 442 (D.C.Cir.1996).

In deciding whether there are any conditions of release that will reasonably assure Epstein's appearance, the Bail Reform Act requires us to consider the following factors:

(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release....

18 U.S.C. § 3142(g).

There are a number of factors that weigh in favor of defendant's release on conditions enumerated by the magistrate judge in Florida. He has substantial property in the United States. Moreover, the defendant has no prior criminal history, and the offense involves neither violence nor narcotic drugs. There is no concern that defendant, if released, would pose a danger to any person or to the community. In addition, he promptly confessed to misappropriation of $6 million and paid full restitution long before he had any hint of a prosecution. However, his confession and payment of restitution are mitigated somewhat by the fact that they did not occur until the company auditors had discovered the theft of funds.

On the other hand, strong factors exist which tilt in favor of detention. Most significant is his lack of ties to the United States. While he and his wife own two condominiums in the Miami area and have other assets in this country worth about $1 million, they and their children, as well as other family members, are permanent residents of Brazil. He has property there with at least four times the value of his property here. He also makes a sizeable salary at a company located there. In addition, the United States and Brazil have no extradition treaty. If he were to flee to his homeland, there is virtually no chance

that he could ever be brought to justice in the United States.

Finally, from the information produced at the detention hearing, it is undisputed that the evidence against the defendant for the crime of wire fraud appears to be very strong. The likelihood of his conviction and incarceration is great. Defense counsel argues that, even so, the guideline sentence would only be between 37 and 46 months and may be as low as 24 months because of prompt restitution. Two to four years in jail, according to counsel, is not long enough to tempt defendant to abscond. We disagree. This sentencing range is a sufficiently unpleasant prospect to persuade defendant under the present circumstances to exit the United States if he had the opportunity.

The crucial factor, however, is defendant's lack of ties to the United States and his extensive ties to Brazil with which no extradition treaty exists. In our view, his forfeiture of $1 million worth of assets in the United States would not deter him from flight when in Brazil he has significant wealth, a lucrative job, the presence of his family, and insulation from ever being forced to stand trial. We think he could easily rationalize his departure on the ground that because he has confessed and paid full restitution, criminal prosecution is nothing but undue vengeance on the part of the Government.

We have carefully considered the decision and reasons of the magistrate judge and have read the transcript of the hearing before him. However, we respectfully disagree with his weighing of the facts and reach a contrary result. Since the Government has proven by a preponderance of the evidence that there are no conditions or combination of conditions of release that will reasonably assure defendant's appearance, we will order pretrial detention.

Accordingly, the motion of the United States to revoke the April 13, 2001 release order for Gil Epstein entered by the magistrate judge in the Southern District of Florida will be granted.