**UNITED STATES of America, Plaintiff**

v.

**(2) Hiram TORRES–AVILES, Defendant**

**No. CRIM. 06–063(PG).**

United States District Court, D. Puerto Rico.

April 12, 2006.

Jedrick H. Burgos–Amador, Cond. Galeria I, San Juan, PR, for Hiram Torres–Aviles (2), Defendant.

G. Andrew Massucco–LaTaif, United States Attorney's Office, Warren Vazquez, United States Attorney's Office, Torre Chardon, San Juan, PR, for USA, Plaintiff.

### OPINION & ORDER

PEREZ–GIMENEZ, District Judge.

Before the Court is co-defendant Torres–Aviles' motion for revocation of the

---

4. In light of this holding, the Court need not entertain Morales–Hernandez's two remaining arguments.

magistrate judge's order of pretrial detention without bail pending trial. (Docket No. 49). For the reasons that follow, defendant's motion is **DENIED**, and he is **ORDERED DETAINED WITHOUT BAIL PENDING TRIAL.**

### A. Background

On February 23, 2006, defendant was charged by way of indictment with one count of retaliating against an informant in violation of 18 U.S.C. § 1513(b)(2) and 2. (Docket No. 40). The charge arises from a series of events that transpired on January 18, 2006, when defendant, together with co-defendants Felipe Lopez–De la Cruz and Efrain Santiago–Burgos allegedly beat and threatened to kill a DEA confidential informant after discovering he was wearing a wire during an alleged drug transaction. Defendant Torres–Aviles had been previously charged with the same offense by way of a criminal complaint (Docket No. 11), after which Magistrate Judge Gustavo Gelpi held an adversary detention hearing on January 24, 2006. The Magistrate issued a detention order, having found by clear and convincing evidence that defendant posed a serious risk of endangering the safety of another person or the community. (Docket No. 16).[1]

Defendant sought review of the magistrate judge's detention determination, for which purpose the Court held a *de novo* hearing on March 29, 2006. The parties submitted the matter to the Court both through live argument and by means of proffered evidence. Being fully apprised on the premises, and with the benefit of memoranda from defendant and the Government, the Court is ready to rule.

### B. Legal Standard

A district court engages in *de novo* review of a contested magistrate's pretrial detention order. *United States v. Tortora*, 922 F.2d 880, 884, n. 4 (1st Cir.1990). We begin with the now unremarkable proposition that the right of an accused to bail, while critically important, *Stack v. Boyle*, 342 U.S. 1, 4, 72 S.Ct. 1, 96 L.Ed. 3 (1951), is not absolute. The Bail Reform Act of 1984, 18 U.S.C. §§ 3141–3156, "transformed preexisting practice in very significant ways, providing among other things for the pretrial detention of persons charged with certain serious felonies on the ground of dangerousness-a ground theretofore not recognized." *Tortora*, 922 F.2d at 884.

The Act allows for pretrial detention after a hearing if a judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The statute authorizes the government to seek a detention hearing in cases that involve, *inter alia*, "a serious risk that [the defendant] will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f)(2)(B). The Act also establishes a rebuttable presumption to the effect that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" individuals charged with the offenses enumerated in § 3142(f)(1).

1. Though the Magistrate also based his detention determination on defendants' alleged participation in the narcotics transaction wherein the informant was allegedly retaliated against, the Court need not consider defendant's alleged role in that transaction, as the same was not charged in the indictment. Because the Court rules that the government has proven by clear and convincing evidence that defendant poses a danger to the confidential informant and the community, it need not go further.

18 U.S.C. § 3142(e). This presumption, however, is only triggered once the judicial officer finds that the defendant falls within at least one of the categories enumerated in § 3142(e). In cases where the presumption of dangerousness is not triggered, the government bears the burden of proving by clear and convincing evidence "that no condition or combination of conditions will reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142(e) and (f)(2).

The judicial officer charged with determining the appropriateness of detention under § 3142(e) is guided in his inquiry by the following statutorily enumerated factors: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (2) the weight of the evidence against defendant; (3) the history and characteristics of the accused, including, *inter alia*, character, ties to the community, and past conduct; and (4) the nature and gravity of the danger posed by the person's release. 18 U.S.C. § 3142(g).

### C. Discussion

Defendant Torres–Aviles stands accused of threatening to kill and beating a Drug Enforcement Agency ("DEA") confidential informant after finding that he was cooperating with authorities and wearing a recording device during a meeting with him and the other two co-defendants in this case. (Docket No. 40). During the preliminary and detention hearing presided by Magistrate Judge Gelpi, DEA taskforce Special Agent Alexis Cosme–Gonzalez testified that on January 18, 2006, he and fellow DEA agents dispatched the confidential informant to complete a purchase of one-eighth (1/8) kilogram of cocaine from co-defendant Felipe Lopez-de la Cruz. (Docket No. 39 at 8). After co-defendant Lopez-de la Cruz allegedly in-formed the confidential informant that co-defendant Torres–Aviles would bring the eighth kilogram later, the informant met again with the agents, whereupon he was wired with recording equipment. (Docket No. 39 at 9). The informant was again dispatched, and was observed entering a cockfight arena located near co-defendant Lopez-de la Cruz's house. (*Id.*). Around thirty minutes later, law enforcement agents observed the confidential informant exiting the cockfight arena, and proceeded to pick him up at a previously agreed upon location. (*Id.*). When the informant entered agent Cosme–Gonzalez's vehicle, the agent noticed that the informant "had been assaulted," and the informant told him that he had been "beat up in the cockfight arena." (*Id.*). More specifically, the informant told the agents that, after being questioned about why he was "working for" federal law enforcement, "Hiram [Torres–Aviles] and Efrain [Santiago–Burgos] punched him in the face with their fists..." (*Id.* at 12–13).

The agent's testimony at the detention hearing was borne out by a photograph of the informant reflecting significant trauma to the left side of his face (De novo Hr'g, Gov.'s Ex. 1) and, more importantly, by the audio recordings of what transpired in the cockfight arena during the informant's January 18, 2006 meeting with the co-defendants (De novo Hr'g Gov.'s Ex. 2). Shortly after the informant joined co-defendants Lopez-de la Cruz, Torres–Aviles and Santiago–Burgos at the cockfight arena, Torres–Aviles asked the confidential informant about the identity of some individuals he had been see with prior to the meeting. (De novo Hr'g, Gov.'s Ex. 2 at 4). Co-defendants also asked the informant about his relationship to a red Mitsubishi Nativa vehicle, which was later identified by Agent Cosme–Gonzalez as the DEA vehicle used for surveillance that day. (*Id.* at 5). The informant was soon

asked whether he was wired, which he immediately denied. (*Id.* at 5). Seconds later, however, co-defendant Santiago–Burgos found what turned out to be the wires for the focus of a camera the informant had been wired with. (*Id.* at 6). Co-defendant Torres–Aviles removed the wire from the informant's person, at which point the transcript reflects that the informant reacted by exclaiming "All right. Enough! [or AHHHH!, as transcribed in the Spanish version of the recording]" (*Id.* at 7).[2]

Upon finding the wires on the informant's person, and seemingly unaware that he was still wearing an active audio recording device, co-defendant Torres–Aviles told one of the other people in the room to "[g]o get [him][his] pistol." (*Id.* at 8). As the conversation progressed, and even though the confidential informant continued to deny that he was cooperating with authorities, Torres–Aviles warned the confidential informant: "If you tell on me, I am going to kill you." (*Id.* at 15). After continued denials of his cooperation with authorities, defendant Torres–Aviles again threatened the confidential informant: "I would kill you right here, asshole." (*Id.* at 34). Towards the end of their interaction, Torres–Aviles again threatened the informant's life, when he told him "[s]ucker, [U/I]. I don't. . . I don't point the pistol at your face because. . . because you are. . . you are a. . . you are wretched." (*Id.* at 44). Finally, near the end of the

conversation the recording conveys noises that sounded to the Court (and that the transcriber originally interpreted) as punches. (*Id.* at 54).

It is well settled that the safety of the community can be reasonably assured without being absolutely guaranteed. *Tortora*, 922 F.2d at 884. Thus, "courts cannot demand more than an objectively reasonable assurance of community safety." *Id.* (internal citations omitted) (quoting *United States v. Orta*, 760 F.2d 887, 892 (8th Cir.1985)). Applying the relevant criteria of section 3142(g) to the facts of the instant case, however, leaves little doubt that Torres–Aviles should remain detained pending trial, as no release condition or combination of conditions would reasonably assure the safety of the government's confidential informant/witness and the community. *See* 18 U.S.C. § 3142(e).

First, the nature and circumstances of the offense charged, for which a grand jury has already found probable cause to believe Torres–Aviles guilty, make clear that the charges involve a crime of violence, as well as numerous threats to the life of a witness, which were caught on tape.[3] *See* 18 U.S.C. § 3142(g)(1). Second, the weight of the evidence available against co-defendant Torres–Aviles is substantial, as his threats against the confidential informant were recorded and played for the Court. *See* 18 U.S.C. § 3142(g)(2). As a general matter, the Court highlights the fact that pretrial de-

---

2. Torres–Aviles' own statements during the January 18, 2006 meeting at the cockfight arena make clear that he was aware of the presence of the wires on the informant's person and, even more, that he personally struggled with the informant to remove them from his body. *See* De novo Hr'g Gov.'s Ex. 2 at 42 (Torres–Aviles asks the informant why he "struggle[d] so much for [him] to take that [the wires] away from you?")

3. 18 U.S.C. § 3156(a)(4) defines the term "crime of violence" as:
(A) an offense that has an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another; or
(B) any other offense that is a felony and that, by its nature, involves substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

tention is a regulatory (as opposed to punitive) restriction. *Salerno,* 481 U.S. at 747, 107 S.Ct. 2095. As such, the quantum of proof the government must meet to justify pretrial detention is that of clear and convincing evidence, a standard significantly more lenient than that required for conviction. *See Salerno,* 481 U.S. at 751, 107 S.Ct. 2095. The government's proffered recordings clearly surmount this burden. In response to the overwhelming weight of his clients recorded threats, defense counsel argued that they were a product of his outrage at having found out that he was attempting to consummate a narcotics transaction in the cockfight arena that he managed. Counsel's ingeniousness notwithstanding, the Court cannot ignore the common-sense import of the threats contained in the audio recordings of the exchange between co-defendants and the confidential informant.

Finally, and most importantly, the danger posed by defendant Torres–Aviles' pre-trial release is both serious and readily ascertainable. *See* 18 U.S.C. § 3142(g)(4). Unlike a case where the defendant might pose a generalized threat to the safety of the community, the instant case also implicates the threat defendant's pretrial release would pose to a particular individual who happens to be a confidential government informant and a potential witness at trial. On this point, it is significant to note that the legislative history of the 1984 Bail Act repeatedly emphasizes that defendants who have threatened witnesses pose a significant danger to the community. *See* S.Rep. No. 225, 98th Cong., 1st Sess. at 7, 12, 15, 21, *reprinted in* 1984 U.S.Code

Cong. & Adm. News at 10, 15, 18, 24, 25 (Supp.9A). *Accord, United States v. Delker,* 757 F.2d 1390, 1400 (3d Cir.1985) (denying bail in part because of evidence of intimidation of witnesses by defendant). The Court is convinced that the audio recordings examined and admitted at the *de novo* hearing offer clear and convincing evidence that Torres–Aviles, seemingly unaware that his statements were being recorded, threatened the confidential informant's life, and specifically warned him that, should he "tell on [him]", he would "kill [him]." (De novo Hr'g, Gov.'s Ex. 2 at 15). As it happens, the confidential informant has in fact "told on" co-defendant Torres–Aviles, and only pre-trial detention can reasonably assure that the latter will not be able to carry out his threat against the former. Additionally, there is no evidence that Torres–Aviles is debilitated in any way that might hinder him in committing another violent crime or in carrying out his pellucid threat to the confidential informant. *See Tortora,* 922 F.2d at 886.

In sum, the facts before the Court constitute clear and convincing evidence that Torres–Aviles poses a direct danger to the confidential informant and the community, and that no condition or combination of conditions of release would reasonably assure their safety.[4] Consequently, co-defendant Torres–Aviles' motion for release pending trial (Docket No. 49) is **DENIED.**

### D. Conclusion

For the reasons set forth above, and having carefully pondered the proffers by

---

4. To be sure, there are factors in the section 3142(g) calculus that weigh in Torres–Aviles' favor. He is a life-long resident of the same locality within our jurisdiction. He has been cohabiting with the same woman for the past ten years and has procreated two children with her. There is no evidence that he is a substance abuser. He has been gainfully employed, does not have a passport, and has allegedly never traveled abroad. *See* 18 U.S.C. § 3142(g)(3). These factors, however, are plainly outweighed by those favoring detention. *See Tortora,* 922 F.2d at 886, n. 7.

defense and government, the pretrial reports, and all other pertinent information, the Court determines that there are no conditions of release or combination thereof that would reasonably assure the safety of any person and the community. Accordingly, defendant Hiram Torres–Aviles is hereby **ORDERED DETAINED WITHOUT BAIL PENDING TRIAL.**

In keeping with the mandate of 18 U.S.C. § 3142(i), the Court hereby directs that the above-mentioned defendant shall continue committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The Court further directs that defendant continues to be afforded reasonable opportunity for private consultation with counsel, and that, on order of the Court or upon request of an attorney for the Government, the person in charge of the corrections facility in which defendant is confined deliver him to a United States marshal for the purpose of an appearance in connection with a court proceeding.

**SO ORDERED.**