UNITED STATES of America, Appellee,

v.

Fleet Wallace MAULL, Appellant.

No. 85–1717.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 20, 1985.

Decided Oct. 9, 1985.

Lawrence J. Fleming, St. Louis, Mo., for appellant.

Sam Rosenthal, Washington, D.C., for appellee.

Before LAY, Chief Judge, HEANEY, Circuit Judge, BRIGHT, Senior Circuit Judge, and ROSS, McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG and BOWMAN, Circuit Judges, En Banc.

JOHN R. GIBSON, Circuit Judge.

The issue presented is whether under the Bail Reform Act of 1984, 18 U.S.C. § 3142, a district court,[1] on review of a defendant's appeal for a reduction of a magistrate's bond order, may on its own motion call for a detention hearing and order a defendant detained pending trial. A panel of this court held that the district court is without the authority to do so. We granted rehearing en banc and we now hold that the district court has such power.[*] We thus affirm the order of the district court.

On May 21, 1985, Fleet Wallace Maull and six others were indicted on charges relating to various violations of federal narcotics and income tax laws. On May 23, 1985, a federal magistrate set Maull's bond at one million dollars. On the same day, Maull moved to amend the conditions of the bond. An evidentiary hearing on the motion was held the following day. On May 28, the magistrate ruled that the evidence at the hearing revealed "that at this time no reduction in bond would reasonably assure the appearance of the defendant" and under 18 U.S.C. § 3142 ordered that the bond remain at one million dollars. Maull then sought review of his motion in the district court. Following a hearing there on May 30 (in which the evidence before the magistrate was stipulated to and which Maull's counsel agreed was a de novo proceeding), the district court found that there was a serious risk Maull would flee and that a detention hearing was necessary to determine whether any condition or combination of conditions in section 3142(c) would reasonably assure his appearance. It conducted the hearing later that day over the vigorous objections of Maull's counsel. The district court invited defendant to make what additional record he chose, but the parties simply stipulated to additional facts.

On May 31 the district court entered an order detaining Maull, finding that, in fact, no conditions set out in section 3142(c) could reasonably assure his appearance at trial. It stated that while section 3142(f) provides that a detention hearing shall be held immediately upon the defendant's first appearance before a judicial officer, Maull's appearance before the magistrate did not deprive the district court of the power under section 3145 to conduct a de novo review with the same options before it as had the magistrate.

Maull then appealed to this court. He argued first that the district court's action was untimely under the provisions of section 3142(f). He also contended that the court exceeded the scope of its authority because the Bail Reform Act of 1984 does not confer jurisdiction on the district court to go beyond review of the conditions of a bail bond to consider whether pretrial detention is appropriate. The panel accepted these arguments in its reversal and remand of the district court's order.

## I.

■ We cannot endorse the panel's interpretation of the Act. First, the district court did not exceed its authority. Maull correctly stated to the district court that its review should proceed de novo. As the Third Circuit has recently noted in *United States v. Delker,* 757 F.2d 1390 (3d Cir. 1985), practice under the former statute, the provisions of the Federal Rules of Appellate Procedure, and the legislative history of the Act support this interpretation. *See, e.g., United States v. Thibodeaux,* 663 F.2d 520, 522 (5th Cir.1981) (prior review statute conferred "a responsibility on the district court to reconsider the conditions of release fixed by another judicial officer * * * as unfettered as it would be if the district court were considering whether to amend its own action"); *see also United States v. James,* 674 F.2d 886, 890 (11th Cir.1982); *United States v. Zuccaro,* 645 F.2d 104, 106 (2d Cir.) *cert. denied,* 454 U.S. 823, 102

---

**1.** The Honorable Edward L. Filippine, United States District Court for the Eastern District of Missouri.

* On August 23, 1985, 771 F.2d 506, we issued an order affirming the detention order, and stated that this opinion and dissent would follow.

S.Ct. 110, 70 L.Ed.2d 96 (1981). As *Delker* points out, nothing in the new act suggests that Congress intended to change this practice:

> [T]he legislative history states that § 3145 made only two substantial changes in the law: (1) permitting review of all releases irrespective of whether the defendant could or could not comply with the conditions of release; and (2) permitting the government to seek review and appeal of release decisions to the same extent that such authority is given defendants with respect to detention orders. *This suggests that Congress intended the prior practice of de novo review to continue.*

757 F.2d at 1394–95 (emphasis added).

Further, Rule 9 of the Federal Rules of Appellate Procedure provides that in an order refusing or imposing conditions of release, the district court must "state in writing the reasons for the action taken." No similar requirement is placed on the magistrate with respect to a release order, 18 U.S.C. § 3142(h), although a detention order must contain written findings of fact and a written statement of the reasons for the detention. 18 U.S.C. § 3142(i)(1). Thus, particularly with respect to release orders, the requirement of Rule 9 could not effectively be met without de novo determinations.

To engage in a meaningful de novo review, the district court must have available the options open to the magistrate. The act requires a progression from one choice to the next in a judicial officer's determination of whether pretrial detention is called for. *See United States v. Orta,* 760 F.2d 887, 890 (8th Cir.1985) (en banc). Only after determining that release upon personal recognizance or an unsecured appearance bond will not reasonably assure appearance or will endanger the safety of others (*see* 18 U.S.C. § 3142(b)), may the judicial officer then proceed to consider the conditions set out in section 3142(c)(2)(A)–

(N). In reviewing the order of the magistrate, the district court must engage in this same analysis. It was in making this analysis that the district court determined that none of the conditions of section 3142 would assure Maull's appearance. It then had no alternative but to deny bail.

The legislative history of the Bail Reform Act particularly addresses the situation which developed in Maull's request for review:

> ▮f a judicial officer determines that a $50,000 bond is the only means, short of detention, of assuring the appearance of a defendant who poses a serious risk of flight, and the defendant asserts that, despite the judicial officer's finding to the contrary, he cannot meet the bond, the judicial officer may reconsider the amount of the bond. If he still concludes that the initial amount is reasonable and necessary then it would appear that there is no available condition of release that will assure the defendant's appearance. *This is the very finding which, under 3142(e), is the basis for an order of detention, and therefore the judge may proceed with a detention hearing pursuant to section 3142(f).*

S.Rep. No. 225, 98th Cong., 1st Sess. 16, *reprinted in* 1984 U.S.Code Cong. & Ad. News 3182, 3199 (emphasis added). Maull argued before the magistrate that he could not post a one million dollar bond. When the district court concluded that there was a serious risk of flight, knowing, as it did, of Maull's claim, it acted within the intent expressed by Congress in proceeding to a detention hearing.

■ Maull argues and the panel found that the action of the district court was untimely, since no detention hearing was held immediately "upon the person's first appearance before the judicial officer." 18 U.S.C. § 3142(f). This position ignores the fact that this *was* Maull's first appearance before the district court, after it of its own motion called for a detention hearing.[2]

---

**2.** To argue, as does the dissent, that in its de novo review the district court is not a judicial officer with the authority under § 3142(f)(2) to

move for pretrial detention, ignores the statute with its broad definition of the term, *see* 18 U.S.C. § 3156(a)(1), and the plainly expressed

Further, we agree with the *Delker* court that this portion of the act does not "suggest * * * that a hearing may be had only upon the defendant's appearance before the first judicial officer he or she faces. Rather, the import of the clause is to call for a prompt hearing on the issue of detention." 757 F.2d at 1394. The cases relied upon by Maull and by the panel in support of its action are distinguishable. Both involve multiple appearances before the same judicial officer with motions for detention filed by the government after the first appearance. In *United States v. O'Shaughnessy*, 764 F.2d 1035 (5th Cir.1985), the court held that the government's failure to move for pretrial detention on the defendant's initial appearance, even though it did so move six days later at his arraignment, made the later detention hearing untimely. The court simply reasoned that its holding was required by the statutory language. *Accord United States v. Payden*, 759 F.2d 202, 204 (2d Cir.1985) ("Act requires that the detention hearing be held on defendant's first appearance"). Further, the cases overlook, as did the panel in its order, the context of the statute. Section 3142(f) provides:

> [t]he judicial officer shall hold a [detention] hearing * * * [u]pon motion of the attorney for the Government or upon this judicial officer's own motion, that involves—
>
>> (A) a serious risk that the person will flee;
>>
>> (B) a serious risk that the person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.
>
> The hearing shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance.

*O'Shaughnessy* and *Payden* as well as the panel seized upon only the language in the final sentence quoted above. That sentence, however, must be read with the immediately preceding language which allows the judicial officer on his or her own motion to hold a detention hearing. A fair reading of the statute is not that a detention hearing must be held "immediately" when a defendant first appears in court, else to be forever barred, but rather that once a motion for pretrial detention is made,[3] a hearing must occur promptly thereafter. This reading, consistent with *Delker*, serves the spirit of the statute and avoids the technical trap a hasty reading produces. Here the magistrate did not hold a detention hearing because he accepted the government's recommendation of the one million dollar bond and found that this condition would reasonably assure Maull's appearance. The district court, however, found a serious risk of flight and applied this part of the statute to immediately call a detention hearing. This was done upon Maull's first appearance before the district court. We conclude that this procedure is consistent with the statute.

As the *O'Shaughnessy* court recognized, its interpretation of the statute creates potential problems, such as the unavailability of pretrial detention when "information establishing a defendant to be a danger to others comes into the Government's possession shortly after the initial appearance."[4]

---

intent of Congress as illustrated by the legislative history.

3. The legislative history makes clear the importance of allowing the judicial officer to proceed to a detention hearing when the officer believes it necessary:

> Statutory authority to permit the judicial officer to move for a pretrial detention hearing under the circumstances described in subsection (f)(2) makes it clear that the judicial officer who believes that there may be a basis

for denying release should not be foreclosed from addressing this concern absent a motion for a detention hearing by the government. S.Rep. No. 225, 98th Cong., 1st Sess. 21, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3204. This is exactly what the district court did when Maull appeared before it for the first time.

4. The *O'Shaughnessy* court's answer to this problem is unsatisfactory. It suggests that if the government is uncertain about the need for detention, it should move for detention and

*United States v. O'Shaughnessy,* 764 F.2d at 1038. Even more centrally, the decision relies on a restricted reading of one phrase of the act to defeat Congress's intent to give judges "the tools to make honest and appropriate decisions" regarding pretrial detention. S.Rep. No. 225, 98th Cong., 1st Sess. 5, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3188.

Our view of *Payden* and *O'Shaughnessy* conforms to that expressed recently by the United States Court of Appeals for the Fifth Circuit in *United States v. Fortna,* 769 F.2d 243 (5th Cir.1985). In *Fortna,* when the defendant first appeared before the magistrate following the filing of a complaint, the magistrate *sua sponte* called for a detention hearing to determine whether to grant bond or detain the defendant. The hearing was held and the magistrate, finding that the defendant posed a serious non-physical danger to the community because of his key role in a major cocaine importing organization, denied bond. The district court, upon appeal, not only affirmed the magistrate's ruling on the proffered ground, but went further to find that defendant posed a serious risk of flight if released and that no combination of conditions would reasonably assure his appearance at trial. Judge Garwood's opinion affirming the action of the district court is instructive:

> When the district court, pursuant to 18 U.S.C. § 3145(b), acts on a motion to revoke or amend a magistrate's pretrial detention order, the court acts de novo and makes an independent determination of the proper pretrial detention or conditions for release. *See United States v. Freitas,* 602 F.Supp. [1283] at 1293 [ (1985) ]. *Cf. United States v. Thibodeaux,* 663 F.2d 520, 522 (5th Cir.1981) (same under prior law). Moreover, the rule of de novo determination by the district court applies not only when the accused challenges the magistrate's order, but also when the government does, as it is authorized to do by section 3145(a)(1). *United States v. Delker,* 757 F.2d 1390, 1394 (3d Cir.1985) (relying on our *Thibodeaux* opinion). In such a situation, the district court, making an independent determination, can order pretrial detention even though the magistrate has refused to do so. *Delker, supra.* That being the case, we see no reason why the district court, having had the magistrate's ruling properly brought before it, cannot support what the magistrate has actually ordered with additional findings based on its independent consideration of the record before the magistrate and the additional evidence adduced before it "as unfettered as it would be if the district court were considering whether to amend its own action." *Thibodeaux,* 663 F.2d at 527. (Footnote omitted).

*United States v. Fortna,* 769 F.2d at 250.

This approach supports the decision we reach today. *Fortna* ratifies the propriety of the exercise of power by the district court to consider upon de novo review grounds other than those considered by the magistrate. Judge Filippine's action, the

---

then at the first appearance request a continuance. The court's solution further would clutter the mechanism of pretrial proceedings. To protect itself, the government apparently would be forced to move mechanically for pretrial detention and continuances whenever, as may often be the case, the evidence regarding the desirability of pretrial detention had not been developed fully in the brief time between arrest and first appearance. The *O'Shaughnessy* court also suggests that should the government's concern arise after the time for seeking pretrial detention, "the Government may move for additional or different conditions of pretrial release under 18 U.S.C. § 3142(c) or move for revocation of release and detention for a violation of a condi-

tion of release under 18 U.S.C. § 3148." *United States v. O'Shaughnessy,* 764 F.2d at 1038. The point is, of course, that pretrial detention is called for only when a condition or combination of conditions of section 3142(c) is deemed inadequate. Thus, the "solution" is no solution at all. Further, section 3148 involves sanctions for violation of release conditions. If pretrial detention is appropriate to prevent a defendant from fleeing but cannot be imposed because of the technical reading given the statute here, it is not particularly helpful to suggest that once the defendant has violated the conditions of his release by fleeing the country, the judicial officer may *then* enter an order of detention for such violation.

issuance of a detention order when the magistrate had not done so, constitutes a similarly proper exercise of power on de novo review.[5] Thus, when Maull raised the issues on appeal, the district court, as the judicial officer ultimately responsible for trial of the case, applied the de novo standard. Upon finding that there was likelihood of flight, it was required to analyze the conditions of release to determine whether any would give reasonable assurance of appearance. When it found none existed, it had the duty under the Bail Reform Act to deny release. To hold that the judge responding to this duty only may lighten the conditions already imposed, but not bolster them, would emasculate the essential scope of the statute.

■ Maull argues that to deny release upon appeal from the bond set by the magistrate violates the fifth amendment right of due process. His argument, which echoes the reasoning of *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), essentially is that the imposition of bond or detention during the pretrial phase of the proceeding is punishment and that the specter of increased punishment following appeal creates a chilling effect on the criminal defendant's exercise of appeal rights. *Pearce*, however, concerned the imposition of a more severe punishment following conviction on a retrial after a successful appeal. On the other hand, while pretrial detention involves incarceration and necessarily a great diminution of personal liberty, it is not punishment if it serves a legitimate regulatory purpose which outweighs its punitive aspects and is not excessive in relationship to that purpose. *United States v. Edwards*,

430 A.2d 1321, 1332 (D.C.Ct.App.1981) (en banc), *cert. denied*, 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982).[6] *See also Bell v. Wolfish*, 441 U.S. 520, 561, 99 S.Ct. 1861, 1885, 60 L.Ed.2d 447 (1979). Here the district court's purpose for imposing pretrial detention was clearly regulatory: to protect the integrity of the judicial process by insuring that the defendant would be present to stand trial for the crimes accused. Nor given Maull's earlier actions and the seriousness of the charges may it reasonably be deemed excessive. Thus, such detention is not punishment. Moreover, in *Pearce*, the court sought to attack a perceived vindictiveness which motivated the increased sentences. *North Carolina v. Pearce*, 395 U.S. at 725, 89 S.Ct. at 2080. Here it was not vindictiveness but the prevention of pretrial flight, which moved Congress to authorize district courts, upon evaluation of the record in light of the sequential standards set out in section 3142, to impose detention. District court review of the earlier judicial officer's order on the question of detention constitutes an exercise of most significant judicial authority. It is not prosecutorial in nature. When the judge finds that no condition can reasonably prevent defendant's flight, he or she is empowered to detain. Assuring appearance at trial long has been a proper concern of district courts. *United States v. Jessup*, 757 F.2d 378, 387 (1st Cir.1985); *United States v. Golding*, 742 F.2d 840 (5th Cir.1984). These distinctions render Maull's reliance on *Pearce* unavailing.

■ The argument that allowing the same judicial officer to move for detention and then to conduct the detention hearing violates due process principles, as it would

**5.** Our reliance on *Fortna* is not undermined by a footnote to the above quoted passage which adds: "We do not suggest, of course, that the district court may modify the detention or release terms actually ordered by the magistrate in a manner unfavorable to the accused in the absence of an appeal by the government." *United States v. Fortna*, 769 F.2d at 250 n. 6. This footnote simply is dictum, commenting upon a situation not presented by the facts. Here the issue, the district court's authority under § 3142(f) to call for a detention hearing, faces

us squarely. We should accord this dictum no more weight than it can bear.

**6.** The statute construed by the Court of Appeals for the District of Columbia in *Edwards* served as a model for the drafters of the Bail Reform Act. In drafting the Act, the Senate Judiciary Committee specifically endorsed the *Edwards* construction. S.Rep. No. 225, 98th Cong., 1st Sess. 8, *reprinted in* 1984 U.S.Code Cong. & Ad.News, 3182, 3190–91.

in the context of contempt proceedings, similarly is unavailing. First, this is precisely what is contemplated by the statute. Second, the decision to detain is not a determination of guilt on the underlying charge. Rather, this procedure is designed to sustain the integrity of the judicial function by insuring the appearance of the defendant at trial. As such it implicates only limited due process concerns which are not here transgressed.

Still another observation is in order. Sections 3145(a) and (b) underscore the importance of the judge having original jurisdiction over the offense. We do not believe that this substantial responsibility, placed in the hands of an Article III judge, can be diminished by the earlier action of a magistrate. In vesting decision-making authority in magistrates under the Federal Magistrates Act, 28 U.S.C. § 636, Congress was sensitive to Article III values. It emphasized that "the magistrate acts subsidiary to and only in aid of the district court," and that "the entire process takes place under the district court's total control and jurisdiction." *United States v. Raddatz,* 447 U.S. 667, 681, 100 S.Ct. 2406, 2415, 65 L.Ed.2d 424 (1980). Congressional intent to limit the scope of magistrate authority is reinforced by the charge of 18 U.S.C. § 3142(f), which gives the judicial officer upon his own motion the authority to call a detention hearing where there is a serious risk that the defendant will flee. The power to decide must finally reside in the Article III court. We thus cannot conclude that the government's failure to request detention before the magistrate, or for that matter at all, constrains the district court judge.

We conclude that the district court had the authority under § 3142 to call for and conduct the detention hearing, and finding that no condition of release would reasonably assure Maull's appearance, to order detention. Any other result would do violence to the statutory context of pretrial detention procedure under the Bail Reform Act, the intent of Congress in passing the Act, the responsibility explicitly given district judges to move for a detention hearing, and the mandated relationship between magistrates and the district court under the Federal Magistrates Act and Article III.

## II.

Having determined that the district court had the authority to order detention, we must now consider the propriety of that order. First, we turn to the standard that governs our review of this question. Our circuit has not addressed this issue. In the past our rulings may have followed differing approaches. Several circuits have held that district court decisions regarding pretrial detention are to be judged under the clearly erroneous standard. *United States v. Chimurenga,* 760 F.2d 400, 405 (2d Cir. 1985); *United States v. Williams,* 753 F.2d 329, 333 (4th Cir.1985).[7] The Third Circuit, however, has determined that "courts of appeals must independently assess the merits of applications for release on bail pending appeal once denied by the trial court." *United States v. Provenzano,* 605 F.2d 85, 92 (3d Cir.1979); *see United States v. Delker,* 757 F.2d at 1400 (*Provenzano* standard applicable under Bail Reform Act).

*Chimurenga* and *Williams* do not carefully analyze the issue. *Provenzano,* however, engages in a detailed examination of the reasons for its approach. The court there looked to the practice of individual justices of the Supreme Court sitting as circuit justices in considering bail applications. The in-chambers opinions arising from such applications have "uniformly established that although district court decisions respecting bail are entitled to 'great

---

**7.** The language of some recent circuit opinions reflects an adoption of the clearly erroneous standard of appellate review as well. In *United States v. Fortna,* the Fifth Circuit stated that the "scope of the review is limited and the order is to be sustained 'if it is supported by the proceedings below.'" 769 F.2d at 250 (quoting the First Circuit's opinion in *United States v. Jessup,* 757 F.2d at 387–88, and relying on its own precedent under the prior statute in *United States v. Golding,* 742 F.2d at 841).

deference,' a Circuit Justice has a non-delegable responsibility to make an independent determination of the merits of the application." 605 F.2d at 92; *see Truong Dinh Hung v. United States,* 439 U.S. 1326, 1328, 99 S.Ct. 16, 17, 58 L.Ed.2d 33 (Brennan, Circuit Justice, 1978); *Mecom v. United States,* 434 U.S. 1340, 98 S.Ct. 19, 54 L.Ed.2d 49 (Powell, Circuit Justice, 1977); *Harris v. United States,* 404 U.S. 1232, 92 S.Ct. 10, 30 L.Ed.2d 25 (Douglas, Circuit Justice, 1971); *Sellers v. United States,* 89 S.Ct. 36, 21 L.Ed.2d 64 (Black, Circuit Justice, 1968). It follows that a panel of the court of appeals should assume the same obligation as that of a circuit justice. If not, as a practical matter alone, a greater number of petitions to the Supreme Court would result, in hopes of a broader review than that given by the panel of the circuit court.

The *Provenzano* court also relied on Rule 9 of the Federal Rules of Appellate Procedure, which states that motions for release shall be heard by an appellate court "upon such papers, affidavits, and portions of the record as the parties shall present." Thus, because "this requirement permits consideration by the court of appeals of evidence that may not have been before the trial judge, it, too, indicates that the court of appeals should independently determine such applications." 605 F.2d at 93. In *Delker,* the court noted that the legislative history makes clear that the procedures for appeal are still those "set forth in Rule 9 of the Federal Rules of Appellate Procedure." 757 F.2d at 1399 (quoting S.Rep. No. 225, 98th Cong., 1st Sess. 29 n. 92, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3212 n. 92). The *Delker* court then stated:

> Rule 9's requirements mandate that appellate courts give the reasons articulated by trial judges respectful consideration, but if, after careful assessment of the trial judge's reasoning, together with such papers, affidavits, and portions of the record as the parties present, the court of appeals independently reaches a

conclusion different from that of the trial judge the court of appeals has the power to amend or reverse a detention or release decision.

757 F.2d at 1400.

■ While we find the Third Circuit's analysis persuasive, we do not believe it is totally inconsistent with the approach of *Chimurenga* and *Williams.* Both *Provenzano* and *Delker* state that the trial judge's *reasons* must be independently reviewed but do not address explicitly the deference to be accorded *factual findings.* In criminal cases tried to a court, factual findings made by the trial judge, where they concern matters other than the ultimate question of guilt, must stand unless clearly erroneous. *Campbell v. United States,* 373 U.S. 487, 493, 83 S.Ct. 1356, 1360, 10 L.Ed.2d 501 (1963); *United States v. Londe,* 587 F.2d 18, 20 (8th Cir.1978) *cert. denied,* 439 U.S. 1130, 99 S.Ct. 1050, 59 L.Ed.2d 92 (1979). The Supreme Court recently has underscored the importance of this standard of review in civil cases. *See Anderson v. City of Bessemer City,* —— U.S. ——, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). We believe that in review under section 3145 the clearly erroneous standard should be applied to factual findings made by the district court. Many of the issues in such cases will involve issues of credibility best determined by the trier of fact. However, conclusions and reasoning relating to the ultimate questions flowing from such factual considerations—issues such as the reasonable likelihood of success on appeal and the determination of the conditions that will reasonably assure the appearance of the defendant—should be the subject of independent review. *See United States v. Hazime,* 762 F.2d 34, 37 (6th Cir.1985) (in appellate review of pretrial detention, factual findings not disturbed unless clearly erroneous, but de novo consideration given ultimate conclusions and mixed questions of law and fact).[8] As further illustration of the distinction, we observe that the

---

**8.** Such issues, of course, will arise out of factual findings to which considerable deference should      be accorded.

factors of section 3142(g)(3) and (4) relating to the individual characteristics of the defendant and the nature and seriousness of the danger to any person or the community that would be posed by the person's release involve primarily factual issues. On the other hand, the factors of section 3142(g)(1) and (2) involving the nature and circumstances of the offense and the weight of the evidence against the person, as well as the analysis of the conditions of release of section 3142(c)(2)(A)–(N), particularly involve legal or judgmental assessments which are based on factual findings. We need not draw the issue more finely here as our study of a district court's order in any particular case should adequately reveal what are findings of fact that must be reviewed under the clearly erroneous rule and what are conclusions of law or articulations of reasoning that must be independently reviewed.

### III.

■ The district court in its order of May 31 found by clear and convincing evidence that there was no condition or set of conditions that would reasonably assure Maull's appearance.[9] It set out factors to be considered as contained in 18 U.S.C. § 3142(g). The district court made the following findings in its order.

The defendant, who currently resides in Colorado, is charged with several narcotic violations, including the charge of continuing criminal enterprise. The maximum sentence possible under these charges is imprisonment for life plus fifty years together with substantial fines and forfeitures. In addition, based on the government's indication that it will call as witnesses alleged co-conspirators of the defendant and will present tape recordings implicating the defendant, there appears to be substantial evidence against the defendant. These two factors create a strong temptation for the defendant to flee in order to escape prosecution; a temptation to which defendant has already succumbed when in August of 1983 he used false identification to escape prosecution in Curacao in the Netherlands Antilles.

The district court then set out in detail the incident in Curacao in which Maull and three others arrived with four backpacks equipped with secret compartments containing some twenty pounds of cocaine. The backpacks were seized by customs agents at the airport and Maull and one other escaped while the other two were arrested. The escape from Curacao was described in the agent's testimony again set out in full in the district court's order:

My investigation revealed that upon seeing Mr. Kendrick and Rankin detained by customs authorities in, at the airport in Curacao, Mr. Busch and Mr. Maull passed through customs there without declaring any baggage, left the island, stayed on the island of Curacao in hiding, altered their appearance and secured birth certificates and fictitious names, or names other than their own, were given those passports or those birth certificates by a third party and subsequently, after approximately three to five days escaped from the island of Curacao and escaped prosecution there also.

The agent further testified that the passports and birth certificates were transported to Curacao by Maull's female companion. The district court also found that Maull had numerous connections with people living abroad who might be willing to assist him and that he was fluent in Spanish and capable of traveling with ease throughout many countries in South America. The court also found significant that Maull's passport was found hidden in the house formerly owned by him, secreted in a light fixture. It found "this also indicates preparation to flee prosecution." Our

---

9. The district court order was not based upon a finding of probable cause to believe that a person had committed an offense for which a maximum term of imprisonment of ten years or more is prescribed, and accordingly this rebuttable presumption set forth in 18 U.S.C. § 3142(e) has no application. We deal purely and simply with the issue of reasonable assurance of appearance at trial.

study of the record convinces us that the findings of fact were not clearly erroneous. Making an independent determination of the ultimate conclusion as to whether any conditions would reasonably assure Maull's appearance at trial, we are satisfied that detention was required.

We affirm the order of the district court detaining Maull pending trial.

BRIGHT, Senior Circuit Judge, with whom LAY, Chief Judge, and HEANEY and McMILLIAN, Circuit Judges, join, dissenting.

We dissent.

The majority today casts to the wind any real consideration for the constitutional limitation in the eighth amendment that "[e]xcessive bail shall not be required, * * *" in a criminal case, U.S. Const. amend. VIII, and disregards the clearly expressed language of the Bail Reform Act of 1984 favoring release over pretrial detention, *United States v. Orta*, 760 F.2d 887, 890–91 (8th Cir.1985) (en banc). Moreover, the actions of the district court, which the majority today approves, arguably violate fundamental principles of due process. This court thus creates an unfortunate precedent which is unsupported by any appellate case in other circuits, and contrary to the decided appellate cases in the Second and Fifth Circuits.

We briefly review the background as related in the majority opinion. Fleet Wallace Maull faces serious charges for violations of federal narcotics laws and income tax laws. After voluntarily surrendering to law enforcement officers on May 23, 1985, Maull appeared before a judicial officer, in this instance a United States magistrate, for a determination of his bond status. At that *first appearance*, neither the attorney for the Government nor the judicial officer moved for pretrial detention as authorized by the provisions of 18 U.S.C. § 3142(f) of the 1984 Act. Upon the recommendation of the Government, the magistrate sent bond at $1,000,000, and after a subsequent hearing on May 24, he denied Maull's motion for modification of the bond.

At this juncture, it is important to observe that section 3142 of the Act requires that all persons charged with an offense appear before a judicial officer, who must decide whether that person shall be released on personal recognizance or unsecured appearance bond (section 3142(b)), released subject to certain conditions (section 3142(c)), detained temporarily to prevent, among other things, revocation of conditional release (section 3142(d)), or detained pending trial (section 3142(e)). The statutory scheme requires progression from one choice to the next and, "[t]he wide range of [release conditions] available ensures, as Congress intended, that very few defendants will be subject to pretrial detention." *Orta*, 760 F.2d at 890–91. A pretrial detention hearing is not triggered without a motion by the Government or the judicial officer, and if such motion is made, a hearing must be held *immediately* upon the person's *first appearance* unless a continuance is granted.[1]

In the present case, when the magistrate refused to modify the $1,000,000 bond, Maull sought review of the release order under the review provisions of section 3145(a) of the Act. That section provides

---

1. Section 3142(f) reads in pertinent part:

    **(f) Detention hearing.**—The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) will reasonably assure the appearance of the person as required and the safety of any other person and the community in a case—

    \* \* \* \* \* \*

    (2) Upon motion of the attorney for the Government or upon the judicial officer's own motion, that involves—

    (A) a serious risk that the person will flee;
    (B) a serious risk that the person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

    The hearing shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance.

in pertinent part that if a person is ordered released by a magistrate, either the Government (section 3145(a)(1)) or the defendant (section 3145(a)(2)) may seek "amendment of the conditions of release." The Government did not challenge the magistrate's order.

In his motion for amendment of the conditions of release from the district court, Maull argued that the bail of $1,000,000 violated the Act's clear prohibition against using inordinately high bail to detain defendants. 18 U.S.C. § 3142(c); [2] *see Orta, supra*, 760 F.2d at 890–92 & n. 22. The district court, however, did not confine itself to reviewing whether the bail set was inordinately high, thus requiring "amendment of the conditions of release," which was the only issue in front of it. Instead it, *sua sponte*, converted its review into a detention hearing and, finding that no conditions of release would assure Maull's appearance, ordered Maull detained without bond pending trial. Maull then filed the present appeal, challenging the propriety of the district court's actions.

The majority concludes that the district court had the power to order Maull's pretrial detention, despite the clear language of the Bail Reform Act requiring that detention hearings be held upon the defendant's first appearance before a judicial officer, and despite the fact that the Government here did not challenge, and indeed had requested, the $1,000,000 bond. The majority reaches this conclusion by reading the language of the Bail Reform Act out of context, and by selectively interpreting cases from other circuits, which, upon examination, support this dissent.

The statutory language requiring a detention hearing upon the defendant's first appearance before a judicial officer is clear and unambiguous. The Second Circuit, in *United States v. Payden*, 759 F.2d 202 (2d Cir.1985), recognized that a court of appeals cannot act as a legislature to read this language out of existence. In *Payden*,

the defendant was arraigned on October 17, 1984, five days after the Bail Reform Act took effect, but the parties apparently did not know of its provisions. On October 31, 1984, the Government first moved for pretrial detention and the district judge granted that motion at a later date after a hearing, holding that the "first appearance" requirement was not absolute. The Second Circuit reversed, stating, "[b]ecause the terms of the Act mandated its application to Payden [defendant] at his October 17 hearing rather than two weeks later, we conclude the district court's detention order must be reversed." *Id.* at 204.

Noting the constraints under which the court was governed in its interpretation of the Act's "first appearance" requirement, the court added "[n]othing in the Act suggests that the initial requirement is mitigated in any way by any subsequent hearings. Where statutory language is clear and unambiguous, we are not at liberty to adopt an interpretation different from that directed by the language." *Id.*

*Payden* is clearly contrary to the majority position, as recognized by the majority's attempts to distinguish the case, and by its assertion that the Second Circuit reached the result it did by misreading the Bail Reform Act. *See supra* at 1483.

Not only did the Second Circuit misread the Act, according to the majority, but so did the Fifth Circuit. In *United States v. O'Shaughnessy*, 764 F.2d 1035 (5th Cir. 1985), the Fifth Circuit also faced the interpretation to be given the "first appearance" requirement of 18 U.S.C. § 3142, as it relates to pretrial detentions. There, defendant initially appeared on April 24, 1985, when the government moved to continue bail, which was increased from $75,000 to $175,000 cash or surety. Five days later at arraignment, defendant moved to reduce the bond and the government moved for pretrial detention on grounds that defendant posed a danger to the community. The magistrate granted the government's mo-

---

**2.** Section 3142(c) provides in the penultimate sentence:

The judicial officer may not impose a financial condition that results in the pretrial detention of a person.

tion. The district court denied defendant's subsequent motion to revoke the detention order. On appeal, the Fifth Circuit reversed, stating:

At O'Shaughnessy's first appearance on April 24, 1985, the Government neither moved for a detention hearing nor sought a continuance. The judicial officer did not move for pretrial detention on his own motion. The judicial officer did not conduct a detention hearing. To the contrary, the Government moved to continue bail. Under the Act's unambiguous mandatory language, noncompliance with the "first appearance" requirement of 18 U.S.C. § 3142(f) precludes detention under 18 U.S.C. § 3142(e).

*Id.* at 1038.

This case too is directly contrary to the majority position, but according to the majority, is once again merely the product of the Fifth Circuit's misinterpretation of the "first appearance" mandate of section 3142(f). Instead of the "plain words" construction adopted by the *Payden* and *O'Shaughnessy* courts, the majority construes the "first appearance" requirement as applying to the "first appearance" before the district court, even though the defendant appears there seeking review under section 3145(a)(2) of the Act. That interpretation deviates from the "clear, unambiguous and mandatory statutory language," *O'Shaughnessy*, 764 F.2d at 1038, and "potentially weaken[s] the procedural fabric of the Act * * *." *Payden*, 759 F.2d at 205.

The 1984 Bail Reform Act begins with the following provision:

**3. § 3041. Power of courts and magistrates**

For any *offense against the United States*, the offender may, by any justice or judge of the United States, or by any United States magistrate, or by any chancellor, judge of a supreme or superior court, chief or first judge of common pleas, mayor of a city, justice of the peace, or other magistrate, of any state where the offender may be found, and at the expense of the United States, be arrested and imprisoned or released as provided in chapter 207 of this title, as the case may be, for trial before such court of the United States as by law has cognizance of the offense. Copies of the process shall be returned as speedily as may be into the office of

**§ 3141. Release and detention authority generally**

**(a) Pending Trial.**—A judicial officer who is authorized to order the arrest of a person pursuant to section 3041 of this title shall order that an arrested person who is brought before him be released or detained, pending judicial proceedings, pursuant to the provisions of this chapter.

The "judicial officer" referred to may be a federal judge, a United States magistrate, a state judge, a justice of the peace, or even a mayor of a city. *See* 18 U.S.C. § 3041. Thus, the term "judicial officer" as used in section 3142 means the official, state or federal, before whom the defendant is brought for arrest purposes. In this case, the magistrate before whom Maull first appeared was a judicial officer who was authorized to order his arrest. At that time the "first appearance" requirement was triggered. The district court did not, and could not on review, act as the judicial officer who has the right under section 3142(f)(2) to move for pretrial detention.[3]

The majority attempts to buttress its interpretation of the "first appearance" requirement by asserting that the district court had the implied authorization to call for detention hearings under its power of *de novo* review. The majority relies primarily on two cases, *United States v. Fortna*, 769 F.2d 243 (5th Cir.1985), and *United States v. Delker*, 757 F.2d 1390 (3d Cir. 1985), but examination of these cases reveals the obvious error in such reliance.

the clerk of such court, together with the recognizances of the witnesses for their appearances to testify in the case.

A United States judge or magistrate shall proceed under this section according to rules promulgated by the Supreme Court of the United States. Any state judge or magistrate acting hereunder may proceed according to the usual mode of procedure of his state but his acts and orders shall have no effect beyond determining, pursuant to the provisions of section 3142 of this title, whether to detain or conditionally release the prisoner prior to trial or to discharge him from arrest.

The majority argues that the Fifth Circuit's decision in *Fortna, supra,* "ratifies the propriety of the exercise of power by the district court to consider upon *de novo* review grounds other than those considered by the magistrate." *Supra* at 1484. *Fortna,* however, did not present a case in which pretrial detention was not called for within the "first appearance" requirement of section 3142(f). Indeed, the magistrate in *Fortna* timely called for a detention hearing, and, in fact, ordered detention upon finding that Fortna posed a danger to the community. Fortna sought review in the district court to "revoke or amend" the magistrate's detention order. The district court upheld the magistrate's detention order, merely adding that it believed that Fortna would also pose a serious risk of flight if released. On appeal, the Fifth Circuit affirmed.

The distinctions between the facts in *Fortna* and those present in this case are evident. Here, neither the Government nor the magistrate sought pretrial detention at Maull's first appearance before the magistrate, or at any time subsequent. Moreover, the district court in this case did not review a magistrate's order pertaining to detention, and affirm or reverse. Rather, the district court, on its own motion, held an entirely new hearing on detention, a full seven days after Maull's first appearance in front of the magistrate.

Despite these clear distinguishing features, the majority attempts to rely on *Fortna* to support its position. It quotes a portion of the Fifth Circuit's opinion that explains the district court's power of *de novo* review when acting on a motion for review by the defendant or the Government. This quote reads, in part:

> Moreover, the rule of *de novo* determination applies not only when the accused challenges the magistrate's order, but also when the government does, as it is authorized to do by section 3145(a)(1). * * * In such a situation, the district court, making an independent determination, can order pretrial detention even though the magistrate has refused to do so.

*Fortna, supra,* at 249 (citations omitted). This quote applies only to those situations where a motion for pretrial detention has been timely made and denied, and the Government challenges that ruling on a motion for review. The Fifth Circuit's citation to *United States v. Delker,* 757 F.2d 1390, 1390–94 (3d Cir.1985) makes this limitation clear. In *Delker,* the Government moved for pretrial detention but the magistrate denied the motion and set bail. The Government then sought review in district court and that court ordered pretrial detention. The Third Circuit affirmed, holding that the district court may exercise *de novo* review when the Government challenges a magistrate's order denying pretrial detention. Thus, the *Delker* case, also relied on by the majority is distinguishable from the case at hand, as it involved a governmental appeal from the denial of detention after a timely-initiated hearing.

*Fortna* and *Delker,* therefore, cannot serve as authority for the majority's proposition that the reviewing district court can move, *sua sponte,* for pretrial detention when no previous motion for detention has been made. Indeed, the court in *Fortna* clearly states that, even if such a motion is timely made, and the magistrate refuses to order pretrial detention, the reviewing court cannot order detention if the government does not seek review of the magistrate's ruling: "[w]e do not suggest, of course, that the district court may modify the detention or release terms actually ordered by the magistrate in a manner unfavorable to the accused in the absence of an appeal by the government." *Fortna, supra,* at 250–51, n. 6. Under the *Fortna* reasoning, therefore, the district court in this case could not have ordered Maull's pretrial detention even had a motion for such been timely considered and denied by the magistrate, because it was Maull, not the Government, seeking the district court's review.

The majority dismisses the *Fortna* court's limitation on its holding as mere "dictum," *supra* at 1485 n. 5, yet relies on dictum itself, because the district court in

*Fortna* affirmed the magistrate's timely order for pretrial detention on the defendant's motion for review. The majority seriously misconstrues the *Fortna* decision by ignoring its express limitation on the scope of the district court's *de novo* review powers, while concurrently citing it for the proposition that a district court has the power to order pretrial detention, *sua sponte,* on review of a magistrate's release order. Moreover, the majority's misplaced reliance on *Fortna* cannot be reconciled with the *Fortna* court's explicit adherence to its position in *United States v. O'Shaughnessy, supra,* requiring that the "first appearance" mandate of section 3142(f) be strictly applied.[4]

We have no dispute with the majority's position that the district court exercises a *de novo standard of review* over challenged orders of the magistrate. We do, however, vigorously assert that the *scope* of that review is limited, under the review provisions of the Act, by the nature of the order before the district court and by the issue raised by the party seeking review. *See* 18 U.S.C. § 3145(a). Thus, whereas

here the defendant challenged an order directing that he be released on bail on the condition that he post $1,000,000 bond and no motion for detention had been made, the district court exceeded the scope of its review authority under the Act. As just discussed, *Fortna* and *Delker* do not support the majority's position. Moreover, pre-Act bail cases cited by the majority are not particularly apposite here, where we deal with a new concept under a new statutory scheme.

Thus, both under case law and the express terms of the Bail Reform Act, the district court in this case erred in calling for and conducting a pretrial hearing because

(1) the hearing was not held at the "first appearance" of the offender before the judicial officer as required by the clear language of section 3142(f); and

(2) the district court did not have authority to move for pretrial detention under the Bail Reform Act, even given its "original jurisdiction over the offense." 18 U.S.C. § 3145.[5] The court's function,

---

**4.** The court in *Fortna* stated:

These facts demonstrate that the present case is in a materially different posture than that recently before this Court in *United States v. O'Shaughnessy,* 764 F.2d 1035 (5th Cir. 1985). There the defendant was arrested on April 23 on a warrant providing for $75,000 bail, and was first brought before the magistrate on April 24, at which time the government moved to continue bail, which the magistrate thereupon set at $175,000. It was not until arraignment on April 29 that the government moved for pretrial detention, the hearing on which was then set for (and was later held on) May 1. This Court held that the absence of any request for a pretrial detention hearing on April 24, the defendant's first appearance before a judicial officer, prevented his detention on the grounds of dangerousness to prospective witnesses. In so holding, this Court specifically observed that "[t]he judicial officer did not move for pretrial detention on his own motion" and that "the Government moved to continue bail." At 1038. Neither condition is applicable here. In the present case, the magistrate, at the defendant's first appearance, on his own motion ordered a detention hearing to determine, *inter alia,* whether any bond would suffice to reasonably assure the defendant's appearance. These same circumstances likewise distinguish *United States v. Payden,* 759 F.2d 202 (2d Cir.1985), where the defendant was arraigned on October 17, and there was no mention of detention without bond until the government moved for such an order on October 31, the initial hearing on which was not held until two weeks later.

We observe that the defendant does not complain, and never has complained, that the detention *hearing* was not held on April 24. *Fortna, supra,* at 248.

**5.** This review section reads

(a) **Review of a release order.**—If a person is ordered released by a magistrate, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court—

(1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release; and

(2) the person may file, with the court having original jurisdiction over the offense, a motion for amendment of the conditions of release.

The motion shall be determined promptly.

(b) **Review of a detention order.**—If a person is ordered detained by a magistrate, or by a person other than a judge of a court having

as defined by the language of section 3145(a), was to review the motion for amendment of the conditions of release.

The majority attempts to justify its interpretation of the Bail Reform Act by suggesting that the review powers of the district judge, as an Article III judge, should not be restricted by the earlier action of the magistrate. This argument misconceives, in our view, the narrow issue before us. It was the Government's prosecutor who made the initial choice not to seek Maull's pretrial detention. The majority does not and cannot argue that this exercise of prosecutorial discretion is reviewable. Essentially, however, such review is the end result of the majority's decision to permit district court review of the magistrate's failure to move for pretrial detention and the setting of bail. Article III concerns do not even remotely require such a result. When the prosecutor (or the magistrate) does move for detention hearings, the magistrate's subsequent decision to order or deny detention is fully reviewable if review is sought by the appropriate party. Every aspect of that judicial function exercised by the magistrate, therefore, remains in the "district court's total control and jurisdiction." *United States v. Raddatz,* 447 U.S. 667, 681, 100 S.Ct. 2406, 2415, 65 L.Ed.2d 424 (1980). The magistrate's discretion to choose not to move for pretrial detention, however, appears to be a prosecutorial rather than judicial function.

Although the majority asserts that its interpretation is necessary to avoid constitutional problems, the interpretation, in fact, creates such problems. The delicate constitutional balance struck by the Bail Reform Act is in serious danger of upset through the considerable due process problems arising from the majority's decision to vest both prosecutorial and judicial functions in the *district* court.

Here the district judge, on review of the release order, received the record of the hearing before the magistrate. That record revealed that the prosecutor perceived that a serious risk of flight existed, and believed that Maull had hidden assets which, if used as bail, would deter flight. Again, we must emphasize that the prosecutor never sought pretrial detention and he indicated at oral argument that he believed that Maull held substantial hidden assets which could be used to make bail and that high bail would be an appropriate deterrent to minimize the risk of flight.[6]

With the magistrate's record before it, the district court exercised an essentially prosecutorial function and moved for pretrial detention. After exercising this prosecutorial function, the district court then became the judge of its own motion and ordered pretrial detention on the record made before the magistrate, which was stipulated to by the parties for review. The district court thus became both the prosecutor and the judge. The Supreme Court condemned similar conduct in *In re Murchison,* 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955), where a state judge, sitting as a one-man grand jury, charged the defendant with contempt and then presided over the subsequent hearing on the contempt charge. The Supreme Court stated, "It would be very strange if our system of law permitted a judge to act as a grand jury and then try the very persons accused as a result of his investigations." *Id.* at 137, 75 S.Ct. at 625. *See also Wong Yang Sung v. McGrath,* 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616 (1950) (members of administrative agency may not serve as both a prosecutor of a charge and judge of the hearing of that charge).

These due process concerns are not implicated when the decision whether to initiate

---

original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

**6.** This statement by the prosecutor has importance. In this case, the prosecutor did not seek high bail as a substitute for pretrial detention. Thus the majority's observation, *supra* at 1482–1483, that the legislative history addresses the Maull situation is inappropriate and irrelevant to the issues before us.

detention hearings is vested in the magistrate or the Government prosecutor. The functions of the judge who reviews a release order, and the magistrate who moves for pretrial detention on the first hearing, are distinct. The district court's factual determination underlying its decision to impose pretrial detention in this case is reviewed only under the clearly erroneous rule, not *de novo*. *See supra* at 1487. In contrast, the magistrate's decision on pretrial detention would be subject to *de novo* review by the district court on both the law and the facts.

Our belief that the majority's reading of the statute raises serious due process questions enforces our view that the statute should, under well-settled principles of statutory interpretation, be read in a way to avoid constitutional questions. Accordingly, in reviewing a magistrate's order of release on bail, the statute should not be interpreted to permit district court judges to move for pretrial detention, conduct a hearing on the motion, and then order pretrial detention.

This conclusion is further reinforced by the majority decision's undeniable potential to chill and impede the defendant's right to seek review of release orders because of the threat of obtaining a more onerous result. The prospect of this chilling effect raises fundamental constitutional and policy issues relating to the function of courts in reviewing lower courts or tribunals. The majority did not feel constrained by these issues, noting that pretrial detention is merely "regulatory," not punitive, and thus does not fall within the reasoning of *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), as Maull suggests. *Supra*, at 1485–86. Yet the chilling effect of the majority's decision is unavoidably present if detention can be ordered whenever a defendant challenges the magistrate's setting of inordinately high bail.

The function of a reviewing court is to judge the legality of the ruling of the lower tribunal, and either to affirm or reverse, but not to try a different case. The threat that a defendant's legitimate right to review will be chilled under the approach advanced by the majority supports our view that the Bail Reform Act of 1984 should be read as written and should not imply powers to the reviewing court under section 3145 which are not expressly conferred by the Act.

One further observation impels us to vigorously reject the majority opinion. The right to pretrial release without excessive bail is a precious right preserved by the eighth amendment. U.S. Const. amend. VIII. Just as precious and fundamental to our concept of criminal justice is the presumption of innocence, which has been secured to the citizens of this country through centuries of struggle. *See Stack v. Boyle*, 342 U.S. 1, 4, 72 S.Ct. 1, 3, 96 S.Ct. 1 (1951). Although that presumption is preserved and maintained in criminal trials and is not necessarily determinative on the issue of pretrial incarceration, *Bell v. Wolfish*, 441 U.S. 520, 531–34, 99 S.Ct. 1861, 1869–71, 60 L.Ed.2d 447 (1979), the right to freedom before conviction is recognized as a traditional right which "permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction." *Stack v. Boyle, supra*, 342 U.S. at 4, 72 S.Ct. at 3. These principles are important in our system, and should not lightly be disregarded. Here the majority gives a strained and unusual reading to a statute which is intended to favor release over detention, instead of giving it an ordinary reading, which gives some modest protection to individuals accused but not yet convicted of any crime.

For all these reasons, we unhesitatingly reject the majority's interpretation of the Bail Reform Act which empowers a district court to convert a review hearing brought by a defendant into a detention hearing brought by the district court. Unlike the majority, we are unable to find authorization for the power to incarcerate on review in a law that speaks specifically only to the power of "amendment of the conditions of

*release."* 18 U.S.C. § 3145(a)(2) (emphasis added).

Accordingly, we would hold that the district court erred as a matter of law in moving for pretrial detention of Maull and issuing an order for pretrial detention. In our view, the panel's order in this case rightly determined that we should reverse and remand these proceedings to the district court for prompt review of the conditions of release set by the magistrate.[7] *United States v. Maull,* 768 F.2d 211 (8th Cir.1985). We also would adopt the further observations of the panel.

That review [by the district court] should be conducted consistent with the discussion of this court in *United States v. Orta,* 760 F.2d 887, 890–91 (8th Cir. 1985) (en banc), particularly relating to the prohibitions against using inordinately high financial conditions to detain defendants.

We note that both the magistrate and the district judge articulated concern that Maull may flee. Modification of an improperly high bail may well be accompanied by substantial other conditions for release, without pretrial detention, under 18 U.S.C. § 3142(c).

*United States v. Maull, supra,* at 213.

The district court failed to undertake the required review in this case and his pretrial detention order should be reversed.

---

**7.** Subsequent proceedings in the district court preceding the en banc hearing suggest that the magistrate erred in setting a $1,000,000 bail requirement. On remand from the panel, the district court reduced the bail to $500,000 secured by $250,000 cash or acceptable surety. Dist.Ct. Order of July 12, 1985. Maull remained incarcerated because he could not, or did not, raise the bail and the bail privilege was revoked when, on August 9, 1985, this en banc court granted the government's stay request and ordered the case heard en banc.