UNITED STATES of America, Plaintiff,

v.

Michael BAILEY, Defendant.

No. 90–00202–01/03–CR–W–9.

United States District Court,
W.D. Missouri, W.D.

Nov. 2, 1990.

W. Geary Jaco, Kansas City, Mo., for defendant.

Marietta Parker, Kansas City, Mo., for U.S.

## ORDER DENYING DEFENDANT'S MOTION FOR REVOCATION OR AMENDMENT OF CHIEF MAGISTRATE'S DETENTION ORDER AND COMMITTING DEFENDANT TO CUSTODY PENDING TRIAL

BARTLETT, District Judge.

Pursuant to 18 U.S.C. § 3145(b), defendant moves for revocation or amendment of Chief Magistrate Calvin K. Hamilton's October 16, 1990, detention order. An evidentiary hearing regarding this issue was held before this court on October 29, 1990.

### Standard of Review

Under *United States v. Maull*, 773 F.2d 1479, 1481 (8th Cir.1985), *de novo* review is the proper standard for a district court to apply in reviewing a detention order. *See also United States v. Hurtado*, 779 F.2d 1467, 1480 (11th Cir.1985). At the October 29, 1990, hearing, counsel for both parties agreed that this court should conduct a *de novo* review of the Chief Magistrate's detention order. Therefore, based on *Maull* and the parties' agreement, I proceeded *de novo* in determining whether defendant's pretrial detention is justified.

### Discussion

A judicial officer may order pretrial detention only if he or she finds, after a hearing, that "no condition or combination of conditions will reasonably assure the appearance of the person ... and the safety of any other person and the community." 18 U.S.C. § 3142(e). Pretrial detention may be ordered only where the United States "shows by clear and convincing evidence that no release condition or set of conditions will reasonably assure the safety of the community and by a preponderance of the evidence that no condition or set of conditions under subsection (c) will reasonably assure the defendant's appearance." *United States v. Orta*, 760 F.2d 887, 891 (8th Cir.1985) (en banc).

Under 18 U.S.C. § 3142(e), a judicial officer may, in certain circumstances, rely on an evidentiary presumption in determining whether any condition or combination of conditions will reasonably assure the defendant's appearance and the safety of the community. *See United States v. Dorsey*, 852 F.2d 1068, 1069–70 (8th Cir.1988). Section 3142(e) provides:

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure ... the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)....

The probable cause finding required by § 3142(e) may be based on a grand jury Indictment. *United States v. Suppa*, 799 F.2d 115, 119 (3rd Cir.1986); *United States v. Dominguez*, 783 F.2d 702, 706 n. 7 (7th Cir.1986); *United States v. Hurtado*, 779 F.2d 1467, 1478–79 (11th Cir.1986); *United States v. Contreras*, 776 F.2d 51, 54 (2d Cir.1985); *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir.1985).

An Indictment is sufficient to support a finding of probable cause under § 3142(e) because, in returning an Indictment, a grand jury "conclusively demonstrates that probable cause exists to implicate a defendant in a crime." *Suppa*, 799 F.2d at 118. There is "no reason to require a judicial officer to repeat a process already performed by the grand jury at the possible expense of what is the proper focus in detention hearings, 'the application of the presumptions and the § 3142(g) factors in deciding whether the defendant should be detained.'" *Id.* at 119 (quoting *Contreras*, 776 F.2d at 54).

However, a finding of probable cause based on an Indictment will not necessarily be sufficient, by itself, to require a defendant's detention. *Suppa*, 799 F.2d at 119; *Hurtado*, 779 F.2d at 1478. In *Hurtado*, the court stated:

The showing of probable cause (by means of an indictment) *may* be enough to justify detention if the defendant fails to meet his burden of production, or if the government's showing is sufficient to countervail the defendant's proffer ... but it will *not necessarily* be enough, depending upon whether it is sufficient to carry the government's burden of persuasion.... [T]he government may not merely come before the trial court, present its indictment, and thereby send the defendant off to jail, foreclosing any further discussion. Rather, the defendant still must be afforded the opportunity for a hearing at which he may come forward with evidence to meet his burden of production, leaving on the government the ultimate burden of persuasion.

*Id.* at 1478.

A split exists between the circuits as to whether the § 3142(e) presumption shifts the burden of production or the burden of persuasion to the defendant. The majority of courts hold that the presumption shifts only the burden of production leaving the ultimate burden of persuasion on the United States. *See United States v. Ridinger,* 623 F.Supp. 1386, 1390 (W.D.Mo.1985).

■ Although the Eighth Circuit Court of Appeals has never directly decided this question, I believe that the court implied in *United States v. Orta,* 760 F.2d 887, 891 n. 17 (8th Cir.1985) (en banc), that it would follow the burden of production approach. Judge John W. Oliver reached the same conclusion in *Ridinger,* 623 F.Supp. at 1390. Therefore, I conclude that the rebuttable presumption established in § 3142(e) shifts only the burden of production to the defendant and that the burden of persuasion remains on the United States.

Several circuits of the United States Court of Appeals have addressed the question regarding what amount of evidence is sufficient to rebut the § 3142(e) presumption.[1] In *United States v. Jessup,* 757 F.2d 378, 384 (1st Cir.1985), the First Circuit stated that, in meeting his burden of production, a defendant must produce "some evidence" contrary to the presumption.

*See also United States v. Cook,* 880 F.2d 1158, 1162 (10th Cir.1989) ("burden of production is not heavy ... but in order to rebut the presumption, the defendant must produce some evidence); *United States v. Perez–Franco,* 839 F.2d 867, 870 (1st Cir. 1988); *United States v. Carbone,* 793 F.2d 559, 560 (3rd Cir.1986) (defendant must produce "some credible evidence" to rebut presumption); *United States v. Dominguez,* 783 F.2d 702, 707 (7th Cir.1986); *Hurtado,* 779 F.2d at 1470, n. 4 (defendant must merely come forward with "some quantum of evidence" to rebut the § 3142(e) presumption); *United States v. Alatishe,* 768 F.2d 364, 371 (D.C.1985).

At the October 29, 1990, hearing, plaintiff presented the testimony of Randolph Hopkins, a detective with the Drug Interdiction Unit of the Kansas City, Missouri, Police Department and the parties' stipulation that I may consider the information in the pretrial services report prepared by pretrial services officer James W. McCormack as the testimony McCormack would give under oath if called as a witness. Defendant presented his affidavit, the affidavits of defendant's mother and aunt and testimony of McCormack.

Based on the evidence presented at the hearing, I make the following findings of fact:

1) On October 2, 1990, when defendant was arrested at the Amtrak Station in Kansas City, Missouri, he was a resident of Compton, California. His mother resides in Compton, California; his father is deceased; his brother is in the custody of the State of California; and his daughter resides with his mother in Compton, California.

2) Defendant has not had any full time employment since his graduation from high school in 1987.

3) Defendant has no substantial assets or liabilities.

4) Defendant has been convicted in Compton, California, on two occasions of carrying a concealed weapon. He received

---

1. Apparently, the Eighth Circuit has not yet faced this issue.

one year of probation for each conviction. The most recent conviction was on September 10, 1990. Therefore, at the time he was arrested in Kansas City on October 2, 1990, defendant was on probation.

5) On October 2, 1990, Clyde M. Josenberger met Myesha M. Rice as she arrived at the Amtrak Station in Kansas City, Missouri, on a train from Los Angeles. Josenberger and Rice proceeded from the train platform to a van parked outside the station. Josenberger carried a blue suitcase that Rice had brought with her.

6) The attention of Detective Hopkins, who observed the train's arrival and deboarding of its passengers, was attracted to Josenberger by his suspicious behavior. Hopkins approached Rice and Josenberger as they stood outside the van. When he was approximately three feet away from the van and while displaying his police identification, Hopkins noticed through the open door of the van that a figure inside was "ducking" as if to avoid observation.

7) After identifying himself as a police officer, Hopkins asked Rice whether she would be willing to talk with him. She agreed to do so. He asked for her train ticket and ascertained that it was a one-way ticket from Los Angeles to Kansas City purchased with cash in a different name than the name on Rice's California driver's license which she later produced at Hopkins' request.

8) At Hopkins' request, Rice agreed to allow Hopkins to search the blue suitcase. After Rice gave her consent to search, Josenberger put the suitcase in the van and started to remove items from it. Hopkins removed the suitcase from the van, opened it and found a hard object wrapped in duct tape weighing approximately ten pounds. The package contained 3,626.1 grams of crack cocaine. The street value of a gram of crack cocaine in Kansas City is approximately $120. Therefore, the low estimate of the street value in Kansas City of the crack cocaine seized from Rice and Josenberger was $435,132.

9) When Hopkins later searched the van, he discovered Bailey lying on the back seat of the van. Bailey had concealed himself from the officers the entire time it took Hopkins to identify himself, obtain permission to search the suitcase, search the suitcase, wait for his partner to arrive, leave to get the police vehicle and drive the police vehicle to the van, all of which took approximately five to ten minutes.

10) After being read her *Miranda* rights and being taken to police headquarters, Rice agreed to talk with Hopkins. She said that she was from the Los Angeles area. She had been contacted by her cousin who inquired if she would be interested in bringing a package to Kansas. When Rice agreed, two males named Damon and Mike picked her up and drove her to Mike's house in Compton, California. Damon and Mike went into the house while Rice remained in the car. When they returned to the car, Mike took Rice's suitcase out of the car and did something with it. Rice was not certain what Mike did with the suitcase because she was "fiddling" with the radio. Thereafter, Mike and Damon drove Rice to the Amtrak Station. On the way to the station, they changed vehicles. Rice was given $300 for a ticket and spending money.

11) When Rice arrived in Kansas City, Josenberger met her at the train station. He said "Mike" to her and took the suitcase from her.

12) Rice later positively identified Bailey as the "Mike" who she had met in Los Angeles.

13) An October 17, 1990, Indictment charges Bailey with violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).

14) If Bailey is convicted of violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), he faces a minimum sentence of 235 months of confinement under the Federal Sentencing Guidelines.

Based on the October 17, 1990, Indictment, there is probable cause to believe that Bailey committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act. Furthermore, based on the testimony of Detective Hopkins regarding his personal observation of

defendant and the statement made to him by Rice, probable cause exists independent of the Indictment. Therefore, under § 3142(e), a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the appearance of Bailey as required and that no condition or combination of conditions will reasonably assure the safety of the community.

■ Defendant has not presented evidence contrary to the § 3142(e) presumption. At the hearing, defendant presented his own affidavit denying his alleged membership in a Los Angeles gang, the affidavits of his mother and aunt stating their willingness to post their respective homes as security for defendant's bond and the testimony of pretrial services officer James W. McCormack.[2]

Nothing in defendant's affidavit, the pretrial services report or McCormack's testimony contradicts the presumption that defendant presents a risk of safety to the community or a risk of flight. The willingness of defendant's relatives to post his bond and his mother's willingness to have defendant released into her custody might arguably allow an inference that they believe plaintiff is neither a flight risk nor a risk to the community. However, under the circumstances of this case, particularly in light of the complete absence of any ties to this community, I do not believe this inference is enough to rebut the § 3142(e) presumption.

Even without the § 3142(e) presumption, or supportive of that presumption, consideration of the factors set forth in § 3142(g) convinces me that there are no conditions of release that will reasonably assure defendant's appearance and the safety of the community.

The offense charged involves a large quantity of a dangerous, highly addictive, narcotic drug that is in great demand in the Kansas City area as is established by the value of the drug. The evidence against Bailey is substantial. Bailey has no family or community ties to the Kansas City area

and has not lived in this area for any length of time. Bailey has no full time employment and no financial resources. Bailey's criminal record of two convictions for carrying a concealed weapon in Compton, California, suggests that firearms are not foreign to this defendant. Furthermore, Bailey was on probation at the time he was arrested in Kansas City.

If Bailey were released, he would pose a serious danger to the community. His previous convictions for carrying a concealed weapon, together with the probable cause to believe that he played a significant role in arranging for and transporting to the Kansas City area a substantial quantity of crack cocaine having a value of at least $435,000, establishes the seriousness of the danger to the community if this defendant is released.

Based on the foregoing, the United States has established by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of Bailey as required. Moreover, the United States has established by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if defendant is released from custody pending trial. In reaching this conclusion, I have considered the willingness of Bailey's mother and aunt to put up their houses as security for Bailey's appearance in Kansas City for trial. Bailey's lack of family ties to the Kansas City area and my conclusion that there is probable cause to believe that he was involved in large scale drug dealings suggests that the guarantee that might otherwise exist when family members put their homes on the line is not present in this case. The ability of illegal drug operations to generate substantial amounts of money would make it possible to reimburse Bailey's family members for the loss of their homes thereby allowing Bailey to flee while, at the same time, not doing irreparable harm to his family.

---

**2.** The parties also stipulated that, if called to testify, McCormack would testify to the contents of the pretrial services report prepared by him.

**418**

*Conclusion*

For the foregoing reasons, it is hereby ORDERED that:

1) defendant Michael Bailey's Motion for Revocation or Amendment of Chief Magistrate Hamilton's October 16, 1990, Detention Order is denied;

2) Bailey is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practical, from persons awaiting or serving sentences, or being held in custody pending appeal;  and

3) while in detention Bailey shall be afforded reasonable opportunity for private consultation with his attorney.